HEFLIN v. EASTERN RY. CO. OF NEW MEXICO et al.

(Court of Civil Appeals of Texas. Amarillo. May 24, 1913. Rehearing Denied June 28, 1913.)

1. EVIDENCE (§ 471*)—OPINION.
In an action for an injury to a boy caused by his falling from a depot platform under a freight train as it passed, or by being knocked thereunder by a car door swinging open, testimony of a witness who saw the boy just before the accident, that it was his impression that the boy was standing swinging his foot at the train as it passed, was not inadmissible as opinion evidence, as the testimony of the witness indicated that he was testifying as to his recollection of his personal observation of what the boy was doing just before the accident.
[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2149–2185; Dec. Dig. § 471.*]

2. APPEAL AND ERROR (§ 730*)—ASSIGNMENT OF ERROR—REASONS AND GROUND OF OBJECTIONS.
An assignment of error because of the court's refusal of a request to charge is insufficient when it does not appear therefrom upon what ground the complaint is based, and the statement of facts does not set forth sufficient facts to enable the court to determine whether such charge was improperly refused.
[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3013–3016; Dec. Dig. § 730.*]

3. NEGLIGENCE (§ 141*) — RAILROADS — CONTRIBUTORY NEGLIGENCE—CHILDREN.
Where the evidence showed that plaintiff was a boy of 16 years, but a man in size, weighing 135 pounds, and had lived in and around the railroad depot nearly three or four years, and there was no suggestion that he was not of sufficient discretion to appreciate the danger of a near approach to a moving train, it was not error to refuse plaintiff's request that to prevent a recovery because of contributory negligence the plaintiff must have failed to exercise that degree of care that a person of his age, maturity of judgment, and discretion would have exercised under the circumstances.
[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 382–399; Dec. Dig. § 141.*]

Appeal from District Court, Parmer County; D. B. Hill, Judge.

Action by Andrew Heflin by his next friend against the Eastern Railway Company of New Mexico and others. From a judgment in favor of defendants, plaintiff appeals. Affirmed.

See, also, 155 S. W. 188.

R. R. Hazlewood, of Amarillo, for appellant. Madden, Trulove & Kimbrough, of Amarillo, Carl Gilliland, of Hereford, and Terry, Cavin & Mills, of Galveston, for appellees.

HUFF, C. J. This was an action brought in the district court of Parmer county for Andrew Heflin by his next friend, his father, Y. D. Heflin, and for himself, Y. D. Heflin, against the Eastern Railway Company of New Mexico, the Pecos River Railway Company, the Atchison, Topeka & Santa Fé Railway Company, and the Pecos & Northern Texas Railway Company, to recover damages for an injury received by Andrew Heflin at the depot in Texico, N. M.

The allegations are substantially that the plaintiff, Andrew Heflin, together with his mother, went to the depot at Texico to purchase a ticket to Clovis, N. M., and alleged as follows: "That plaintiff's son thought the passenger train on which he and his mother expected to take passage was due to arrive at said station within about five minutes; but, when he heard said freight train whistle for said station, he supposed it was the passenger train, and that it would approach said station at a safe and reasonable rate of speed, and would stop at said station for at least five minutes, as was and had been for a long time its habit and custom to do. That the said son had the money to purchase his ticket, and just as plaintiff's son, Andrew, was intending to enter said station and purchase a ticket to Clovis, as aforesaid, and while on the platform, and within a few feet of the station door, as aforesaid, some one standing on said platform spoke to plaintiff's son, and, as he turned partly around to reply, said freight train passed said station at a high and dangerous rate of speed, to wit, more than 30 miles per hour. That before plaintiff's son Andrew realized that it was not the passenger train he was expecting, and before he had time to get into the station or to get further away from defendant's track, one of the doors of a freight or refrigerator car in said train, or some other object projecting from one of said cars, struck plaintiff's son, Andrew, the plaintiff herein, on the back and knocked him under the wheels of said freight train, which mangled and crushed plaintiff Andrew's right leg so badly that it was necessary to amputate it, and otherwise bruised, mangled, and injured plaintiff, Andrew Heflin, as hereinafter set forth."

All the defendants answered by special and general demurrers, and general denial, and special answer, denying the partnership under oath, and setting up contributory negligence on the part of the plaintiff, Andrew Heflin. The facts substantially show that the plaintiff, Andrew Heflin, was 16 years of age in April before he was hurt in August, and that on the 5th day of August, 1909, he and his mother went to the depot for the purpose of purchasing a ticket to Clovis, N. M., that he heard the train whistle some half mile from the depot and, supposing it to be the passenger train, went to the depot, in order to take the train, and, after he heard the approach of the train, that he stopped on

the platfrom and glanced up and saw the engine coming about a mile away, and he thought it was the passenger train, and came down to the platform to get a ticket. "On the way down, I saw Ross Duncan and Sheriff Stevens, and his little boy that I knew. They were right along by the office window of the station; they were five or ten feet from the opening between the baggage room and the express office—down next to the window of the telegraph office. I walked up by Ross Duncan and passed right on by him and Sheriff Stevens and saw Ross Duncan, and then came back. I went on the right side of Mr. Stevens, going north, and the little Stevens boy. They were between me and the track. I went right by them, and came back on the left side of them, and went back to see Ross Duncan. Ross Duncan is a druggist about 21 years old. I asked him, Ross Duncan, for a cigarette, and he gave it to me, and I rolled it, and while I was rolling it something hit me in the back—just about the time I got the cigarette rolled. I had not lighted the cigarette. My back was turned to the east at the time I was struck—sorter angling from the track. I was standing something like three or four feet from the track I think, at the time I was struck—I would have been a safe distance. Not very much of the train had passed at the time I was struck, maybe three or four cars. I do not know how many engines the train had. Didn't have time to notice. I didn't realize until after I had been struck that it was not the passenger train. I think a car door struck me, because when I fell I saw a door come over me—an object of some kind that I think was a door. I am certain I saw some object pass over me that looked like a door, and I think it was a car door. No part of the train had struck me until this object—door or whatever it was—struck me. It never interfered with me up until that time. I was not unconscious at any time during the struggle there, and I knew what I was doing in endeavoring to keep out from under the train." He further testified: "I did not suspect it was a freight train and not a passenger train. When I looked up and saw this object, saw then, for the first time, that it was a freight train. This car that struck me was three or four cars back in the train. Not more than that, or I would have noticed it. I was not too busy with the cigarette to notice the train, but I thought it was a passenger train. When the engine passed me, I knew it was going along, and I naturally supposed there were some cars behind it. I didn't look to see what kind of a train it was until it struck me." Some of the witnesses for plaintiff put the speed of the train, as it passed the depot, at 25 to 30 miles per hour, while the witnesses for defendants placed it at 8 or 10 miles an hour. There is considerable conflict in the testimony as to the exact position or place that Heflin was standing at the time he was struck. His testimony is substantially all there is that it was a door that struck him, except his mother says she saw a door open. The defendant in error's witnesses all testify that the doors were closed and sealed, and none of them were open. The defendants introduced two witnesses, one Mr. Criswell, who testified that he saw the boy standing on the platform just before he was struck, and that it was his impression that he was swinging his foot toward the train as it went by; that he did not see him just at the time of the accident, but saw him just before and just after. This witness had gone to the station and purchased his ticket to leave on the passenger train for Clovis, and was a stranger practically in the town. Another witness for defendants, Mr. W. H. Hazen, states that he saw plaintiff about the time of the accident, and, as the train passed, plaintiff first came up to the car, and he was "kind o' grabbing at the car with his hands—kind o' striking at them all along—was not trying to catch them, and after that he lifted up his foot, kicking at the steps as they passed by," and "I would judge that his foot went into the bottom step, and his leg went under, and he was jerked off the platform and went under the car." We believe this is a sufficient statement of the issues, as presented by the pleadings and the evidence, to dispose of the questions raised by the assignments. The jury rendered a verdict for the defendants, and judgment was rendered in accordance therewith.

[1] The court admitted the following testimony of the witness Criswell: "I was under the impression that he was swinging his foot toward the train as it went by. * * * My impression was that he was swinging his foot towards the train as it went by." Plaintiff in error objected to the evidence because it called for a conclusion or opinion of the witness upon a question upon which he had not qualified himself to speak, and which should be passed on only by the jury from the facts before them, and on facts not authorizing expert opinion or conclusion. Mr. Criswell was at the depot for the purpose of taking the passenger train to Clovis. He had purchased his ticket and walked out on the platform, and saw plaintiff in error near the place of the injury. He testified: "I did not see him caught by the train, but only noticed him prior to and after the accident. I could not say positively how the accident occurred, not having seen it. I saw the young man before the train ran over his foot, and when I first saw him he was standing on the platform, and I was under the impression that he was swinging his foot toward the train as it went by. I never noticed him particularly; but my impression was that he was swinging his foot towards the train as it went by." The

answer of the witness indicates he was testifying to his recollection of his observation of what the boy was doing just before he was injured, if so, the testimony was admissible, and the court did not err in admitting the same. Wigmore on Evidence, vol. 1, § 658, says: "'Belief' or 'impression' may signify merely the *degree of positiveness of his original observation* of the facts. The witness may have actual observation of the matter in hand; but the result may have been a not very definite or positive impression. For example, he saw a man and 'thought' that it was the accused. In such cases there is no legal objection whatever to receiving such impression as the witness gained from his observation. In other words, the degree or quality of his knowledge, so far as there was actual personal observation by him, is no ground of objection." Id. 727. "Nevertheless it is clear that the law cannot and does not require absolute certainty of observation. A mere deficiency in the quality of observation is of itself no good reason for excluding whatever result the observer did actually obtain." Should it appear that the witness is only speaking from mere guess or rumor, and not from his own personal observation, then such impression should be excluded. If speaking from personal observation, then he has only an indistinct recollection and can venture only an "impression." In the case of Harris v. Nations, 79 Tex. 413, 15 S. W. 263, it is said: "When he has been in position to know the facts, but his memory has grown dim, what he thinks he recollects is, if relevant, proper to be admitted and to be weighed in connection with the other testimony in the case." Ry. Co. v. Parrish, 43 S. W. 536; 4 Words & Phrases, p. 3444. The witness purports to give the impression of his personal observation of what plaintiff in error was doing just before the injury and his recollection of that occurrence. We think the testimony falls within the rule stated by Wigmore on Evidence.

The evidence upon which plaintiff in error sought to recover in this case is based upon the testimony of a similar nature. He testified: "I think a door struck me—an object of some kind that I think was a door. I always will believe it was a door." The evidence of plaintiff in error was admissible, if at all, for the reason that what he thought or believed only went to "the degree of positiveness of his original observation." He did not have positive knowledge that it was a door; he thought and believed it to be a door from his then observation.

[2, 3] Plaintiffs in error complain of the action of the court in refusing their requested charge No. 1. The defendants in error object to the assignment because it does not appear therefrom upon what grounds complaint is based, and because the statement does not set forth sufficient facts to enable the court to determine whether or not said charge was improperly refused. We think the objections were well taken; but we will consider this assignment as presented. The charge requested is as follows: "In order to prevent a recovery by Andrew Heflin in this case on account of contributory negligence, you must believe from the evidence that he failed to exercise that degree of care and prudence for his own safety that persons of his age, maturity of judgment, and discretion would have exercised under the circumstances." The evidence set out by plaintiffs in error under the assignment is: "Andrew Heflin was 16 years old in April before he was injured in August." There is no allegation in plaintiffs' petition or any reply to the plea of contributory negligence that plaintiff was inexperienced and did not have sufficient understanding to know the danger from a moving train. The facts show he was 16 years and 4 months old when he was hurt, and was a man in size, weighing about 135 pounds. He had gone to school, and was advanced to the sixth grade. He had worked in his father's pool hall something like a year before he was injured; had worked some in the telephone office, and some in the livery stable; had lived some two or three years in Texico, and was frequently at and around the depot at that place, and for four years had lived in Texas, in 300 or 400 steps of a railroad station. There is nothing in the testimony indicating that he did not have sufficient discretion and judgment to be aware of danger from a moving train, or that he was incapable of apprehending or understanding danger from a near approach to a moving train. Under the decisions of the Supreme Court, we do not think the evidence presented the issue which the plaintiff requested to be submitted by special charge No. 1. Railway Co. v. Shiflet, 94 Tex. 139, 58 S. W. 947. In that case Judge Brown, speaking for the court, said: "The evidence showed that Thomas Shiflet was between 11 and 12 years old—most probably within two months of the latter age. This does not bring him within the age at which courts have held a child to be exempt, as a matter of law, from the charge of contributory negligence, neither does it place him at such age as the court will, as a matter of law, hold that he was responsible for his acts. It was a question of fact for the jury to be determined upon the evidence adduced before them. If there was no evidence upon the subject, the issue should not have been submitted, or, having been submitted, the jury ought to have found for the defendant, because it devolved upon the plaintiff to show that, for want of discretion, the negligent act of the deceased was not imputable to him."

It was held substantially in the case of Ry. Co. v. Rodgers, 89 Tex. 675, 36 S. W. 243: "A person of sufficient intelligence to

know the danger of the position he is thus exposed to cannot recover. A child may be of such tender years that it will be conclusively presumed not to have such capacity, otherwise it becomes a question of fact, and the burden is upon the plaintiff to show want of capacity." Shelley v. City of Austin, 74 Tex. 608, 12 S. W. 753; San Antonio Water Works Co. v. White, 44 S. W. 181; Ry. Co. v. Shiflet, 37 Tex. Civ. App. 541, 84 S. W. 247; Ry. Co. v. Trigo, 101 S. W. 254; Over v. Ry. Co., 73 S. W. 535; San Antonio Traction Co. v. Kumpf, 99 S. W. 863–865; Stamford Oil Mill Co. v. Barnes, 103 Tex. 409, 128 S. W. 375–678, 31 L. R. A. (N. S.) 1218, Ann. Cas. 1913A, 111; National Biscuit Co. v. Scott, 142 S. W. 65–67.

The third, fourth, fifth, and sixth assignments are grouped by plaintiff in error and presented as one assignment. The appellee objects to these assignments on various grounds, and because not properly briefed. We believe the objections should be sustained to the assignments as briefed by plaintiffs in error. However, we may state that in our disposition of the second assignment we have disposed of the principal question presented under these assignments. The other question presented in said assignments did not probably injuriously affect the plaintiffs in error's rights, and we therefore overrule the several assignments. The eighth assignment is too general, and will be regarded as waived.

We find no such error in the trial of the cause as will require a reversal. It is therefore affirmed.