13083

CHITWOOD v. CHITWOOD *ET AL.*

(156 S. E., 179)

January, 1930.

*Messrs. Roger M. Heyward* and *Paul A. Cooper,* for appellants,

*Messrs. Heyward Brockington* and *G. Duncan Bellinger,* for respondent,

December 12, 1930.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The gist of this action, one for personal injuries alleged to be due to negligence of the defendants, is contained in Paragraph 3 of the complaint: "That heretofore, on or about July 22, 1925, the defendants, L. A. Chitwood and J. E. Carroll, doing business under the firm name and style of Chitwood and Carroll, were engaged in constructing a bridge over the Great Pee Dee River for the State Highway Department, and the plaintiff, James William Chitwood, a boy of about fifteen (15) years of age, was employed by the defendants as a laborer on said job; that after the plaintiff's work was completed, on or about the 22nd day of July, 1925, the plaintiff, James William Chitwood, was directed by the defendants, their agents or servants, to carry some long heavy iron pipes, about thirty (30) feet long, across the bridge to a point where the pipe line was being constructed; that in carrying the pipe across the bridge the plaintiff had to walk across a stringer which had been erected for the purpose of carrying on the work of the bridge, and in carrying one of the heavy unwieldy pipes above mentioned across said structure, the plaintiff became unbalanced and fell through the structure to the ground below, a distance of some twenty (20) feet, breaking his forearm and causing him severe physical pain and mental suffering and bruising other parts of his body and causing him to lose several weeks from his work."

The defense was a general denial, contributory negligence, and assumption of risk. The trial resulted in a verdict for the plaintiff. Defendants appeal from portions of the charge and from the refusal of their motions for a directed verdict and for a new trial.

In charging on contributory negligence, the trial Judge told the jury: "So then you would have to ferret that issue out in the light of the facts. whatever they are, and see if the plaintiff was guilty, as charged here, of contributory

negligence. He owed the duty of exercising ordinary care and prudence under all the surrounding facts and circumstances. You would have to test that out. You would not test it out by the same yardstick that you would the act of an adult. *If he was between 14 and 15 years of age, then the test that you would apply, the yardstick would be that he would have to exercise that ordinary care and prudence which a boy of his age, of ordinary intelligence and understanding and ordinary reasonable judgment, would have exercised.* If he lived up to that, then there would be no negligence on his part. If he failed to live up to that there would be negligence on his part and, of course, when one hires and puts to work a boy of fourteen or fifteen, one necessarily knows that and has to assume that the yardstick by which that boy's act is to be measured is not the act of an adult but *it is to be that yardstick which I have already given you to use as a test.*"

Exceptions to the italicized portions of this charge raise the question as to the degree of care required of the plaintiff, a minor about 14½ years of age, in the determination of his guilt or lack of guilt of contributory negligence.

Confusion sometimes arises in cases of this kind between the rule as to capacity and that as to due care.

As to capacity, it is held in this State, by analogy to the criminal law, that an infant under 7 years of age is conclusively presumed to be incapable of contributory negligence (*Dodd v. Railway Company*, 95 S. C., 9, 78 S. E., 525; *Sexton v. Construction Company*, 108 S. C., 516, 95 S. E., 129); that between the ages of 7 and 14 there is a *prima facie* presumption of such incapacity, which, however, may be overcome by evidence showing capacity. (*Tucker v. Buffalo Mills*, 76 S. C., 539, 57 S. E., 626, 121 Am. St. Rep., 957); and, by clear implication, that an infant of the age of 14 years or over will be presumed capable of contributory negligence in the absence of proof to the contrary (*Tucker v. Buffalo Mills, supra; Dodd v. Railway Company, supra*).

In the present case the trial Judge told the jury, in effect, that the plaintiff was capable of contributory negligence. There was no exception to this instruction, and we apprehend that no such exception could be sustained; there being nothing in the evidence tending to overcome the presumption of capacity.

Coming then to the question of due care: It is almost universally held that the standard by which the conduct of an infant is to be measured, in determining the question of contributory negligence, is "not whether the child acted as an ordinarily prudent child of its age would have acted, but whether it acted as a child of its age, and of its capacity, discretion, knowledge, and experience would ordinarily have acted under the same or similar circumstances." The authorities on this point are so numerous that it appears unnecessary to cite them, but reference may be had to a long array of cases in the annotation beginning at page 10 of L. R. A., 1917-F; and the rule seems to have been recognized in this State. *Stanton v. Interstate Chemical Corp.,* 97 S. C., 403, 81 S. E., 660. In some cases it is even held that the age of the infant is of little significance except as it bears on the question of knowledge, discretion, capacity, etc. *W. & A. R. Co. v. Young,* 81 Ga., 397, 7 S. E., 912, 12 Am. St. Rep., 320; *Bess v. R. Co.,* 62 Kan., 299, 62-P., 996.

In *B. & A. R. Co. v. Mattison,* 166 Ala., 602, 52 So., 49, 52, the following excellent brief discussion of the subject appears: "There is no inflexible rule by which we can determine the capacity of all children, under all circumstances, for observing and avoiding danger; each child is bound to use the reason it possesses and to exercise the degree of care and caution of which it is capable. One child may understand and appreciate one danger and not another. Another child, of the same age as the first, may understand the danger the first does not, and be insensible to the danger of which the first was aware. A child raised in the city may be perfectly capable of understanding and avoiding the danger of street

cars, railroads, and crowded streets, but insensible of the dangers of a mowing or threshing machine, a foot adz, or a scythe blade, etc.; while a child of the same age and average intelligence, raised on a farm, would fully comprehend and understand the dangers of the latter class, but be wholly unconscious or ignorant of those of the former. Some children at the age of 7 better understand the dangers of trains and cars than do others at 14. Therefore, the capacity, the intelligence, the knowledge, the experience, and discretion of the child are always evidentiary circumstances. There is no ideal standard by which the Court or jury can determine whether a given child in a particular case exercised that measure of care which the law requires."

While it follows from what we have said that the charge of the trial Judge in the instant case was erroneous, we think the error was harmless, for the reason that there is nothing in the record to indicate that the intelligence, understanding, experience, and judgment of the plaintiff were above or below those of an ordinary boy of his age. See *Stanley v. R. Co.*, 112 Mo. App., 601, 87 S. W., 112.

We may add, that a case might well arise in which the conduct required of an infant above the age of 14 would be subject to the same standard as that required of an adult under similar circumstances. This follows from the rule that the care which an infant is required to exercise for his own safety depends upon his intelligence, capacity, knowledge of the danger, etc., and, when these elements are shown to exist in a particular infant in the same degree as in an ordinary adult, there would seem to be no good reason why he should not be held to the same degree of care. Of course, it would be impossible to fix arbitrarily an age at which this condition is reached; the question depends "on the maturity, capacity, and experience of the particular child, and the circumstances of the injury." *Binder v. R. Co.*, 175 Ill. App., 503; *Gress v. R. Co.*, 228 Pa., 482, 77-A., 810, 32 L.

R. A. (N. S.), 409, 21 Ann. Cas., 142; *Heflin v. R. Co.* (Tex. Civ. App.), 159 S. W., 499; *Payne v. R. Co.,* 136 Mo., 562, 38 S. W., 308.

In *Maglinchey v. Southern P. Company,* 5 Cal. Unrep., 363, 44-P., 1021, the Court said that "the proposition is not controverted that the degree of care and prudence to avoid danger, when applied to children, is that which may reasonably be expected of children of like age, experience, and capacity; but as childhood precedes maturity, and grows into it, the standard by which due care is measured also changes, and each year becomes less marked, until it becomes merged in that by which the care and prudence of men are measured, such change being accelerated or retarded by natural or acquired capacity."

With reference to the exceptions as to the refusal of the motion for a direct verdict, made on the grounds that there was no evidence of negligence on the part of the defendant, and that the testimony shows that the risk as to the dangerous nature of the premises was assumed by the plaintiff, and that plaintiff's injury was due to his contributory negligence, no good purpose would be served by reviewing the evidence in detail. It is only necessary to say that we have examined the record very carefully and find that there was evidence to go to the jury on the issues of alleged negligence on the part of the defendants in not furnishing the plaintiff a safe place to work and in ordering him to do work of a nature dangerous for one of his years, without sufficient help, and of the alleged assumption of risk and contributory negligence on the part of the plaintiff. The Court also properly refused the motion for a new trial.

The exceptions are overruled, and the judgment of the Richland County Court is affirmed.

MESSRS. JUSTICES BLEASE and CARTER concur.

MR. JUSTICE COTHRAN (dissenting) : There were only two witnesses in this case, other than the physician—the plaintiff, a young man 19 years old at the time of the trial.

and Shelley, the foreman of a bridge-building force under whom the plaintiff was working, being employed by the contractors, Chitwood & Carroll. The facts are simple, and as to them there is no controversy.

The contractors were engaged in the construction of a bridge over the Great Pee Dee River. On account of the marshy condition of the ground the foundation of the approaches had to be re-enforced by a line of piles which were driven into the ground by a pile-driving steam machine, the water for which was supplied by a pipe line which consisted of sections of 20 feet each and about an inch in diameter. It became necessary in the progress of the work to transfer the machine to another point, and of course to move this, the pipe line. Across the tops of the piles heavy pieces of lumber, some 12 inches square, called "caps," were bolted; they ran at right angle with the line of the bridge; and to these caps were bolted stringers, 4x14 inches square, running parallel with the line of the bridge. The pipe line was being disconnected for the purpose of transferring it to another point, and the sections were being passed up to the plaintiff on top of the bridge, to be carried by him along the uncompleted bridge to the desired point. The plaintiff received from below one of the sections of pipe weighing about 30 pounds and carried it, walking along the stringers to the point of deposit. In order to prevent the end of the pipe from being clogged with mud he decided to cast it down to the ground horizontally, and walked with it to the edge of the bridge upon one of the "caps." In swinging it around to accomplish his purpose, according to his own statement, he miscalculated the medial point of the pipe, and, in his words: "I must have made a miscalculation of where my hand was, for when I turned it loose it caught me under the arm and pulled me off. Q. In other words, you lost control of the pipe and it caught you under the arm and threw you off of the bridge? A. Yes, sir." The

witness Shelley said: "The pipe got overbalanced and he lost control of the pipe and fell off; he got overbalanced."

The allegations of negligence in the complaint are as follows:

"(a) In not furnishing plaintiff a safe and suitable place to carry on the work which plaintiff was ordered to do.

"(b) In requiring plaintiff, a young boy, to carry pipes of the size and shape which made their handling dangerous.

"(c) In failing to furnish plaintiff with sufficient help to carry the said pipes across the bridge.

"(d) In ordering plaintiff, a minor of tender years, to carry the pipes across the bridge, the defendants knowing that the said work was dangerous and that plaintiff would likely be hurt in carrying out their orders."

As to specification (a): The evidence does not contain a suggestion even that the "caps" or the "stringers" were in the least degree defective or that either presented the slightest obstacle to the safe passage of the plaintiff over the bridge. It does not appear that, even if they or either of them was unsafe or defective, such quality had any share or agency in causing the plaintiff's fall. According to his own statement and that of his witness, Shelley, his fall was due to a miscalculation on his part, to becoming unbalanced by reason of the grasp he had upon the pipe.

As to specification (b): The plaintiff testified that the weight of the pipe was some 25 or 30 pounds, and that he could carry it without difficulty.

As to specification (c): This is answered by the foregoing observation as to (b).

As to specification (d): While the path the plaintiff was required to take was in a measure dangerous, as all work about a structure in the air necessarily is, the fall is shown to have been caused, as the plaintiff admits, by his own intervening act of miscalculation, in nowise connected with either "cap" or "stringer."

I think, therefore, that the motion for a directed verdict should have been granted.

According to my conception of the evidence, there was not the slightest showing of negligence on the part of the defendants, and, that being true, the question of the contributory negligence of the plaintiff, a boy between 14 and 15 years of age, becomes an immaterial, in fact an irrelevant, issue; but, as the question has been discussed at length in the opinion of Mr. Justice Stabler, it may not be amiss to express my views of the law.

A child of tender years, under the age of 7, is presumed incapable of doing an act which could be construed, in a person of maturer age, as contributory negligence; between the ages of 7 and 14, the presumption attaches in a rebuttable form, the burden of proof being upon the defendant charging contributory negligence to show that the child was of sufficient capacity, discretion, knowledge, and experience to know and appreciate the danger reasonably calculated to result from his act; between the ages of 14 and 21, the law presumes that he has sufficient capacity, discretion, knowledge, and experience to know and appreciate the danger reasonably calculated to result from his act, the burden of proof being upon the child to overcome such presumption by showing that he did not possess these qualifications. See extended note in L. R. A. 1917-F, 10.

I agree with the statement in the opinion of Mr. Justice Stabler, that the charge complained of was not in conformity with the law; the divergence between us is that in my opinion he has lost sight of the shifting of the burden of proof in the last stage of minority, between 14 and 21.

I think, as I have stated, that the issue is immaterial and irrelevant, for the reason that the evidence shows no negligence on the part of the defendants, and for the further reason that it shows no want of the qualifications referred to in the plaintiff; on the contrary it shows, particularly by his examination, that he was an unusually bright boy and fully cognizant of the dangers of his situation and effort.