15470

HOLLMAN v. ATLANTIC COAST LINE RAILROAD COMPANY

(22 S. E. (2d), 892)

*Messrs. Hagood, Rivers & Young,* of Charleston, Counsel for Appellant,

*Mr. Brantley Seymour* and *Mr. J. C. Long,* both of Charleston, Counsel for Respondent,

November 23, 1942.

The opinion of the Court was delivered by MR. ASSOCIATE JUSTICE FISHBURNE.

This case originated in the Circuit Court of Charleston County, and is an action for actionable negligence, brought by the plaintiff, Hessie Hollman, as administrator of the estate of Arthur Hollman, deceased, to recover damages for the negligent killing of the plaintiff's intestate by the defendant, Atlantic Coast Line Railroad Company.

The deceased, a colored boy, was nine years and seven months old. He was killed as he was walking along a well-defined path leading from King Street to Meeting Street in the County of Charleston, which crossed four parallel railroad tracks at what is known as the Heriot Street Crossing. He

was struck by a northbound passenger train of the defendant. The accident occurred Saturday afternoon, March 19, 1938, at about five o'clock, at a point opposite Heriot Street where it enters King Street about 50 yards north of Magnolia Railroad Crossing, just outside of the limits of the City of Charleston.

There is practically no dispute with reference to the salient facts. The boy was observed by several witnesses just before he came into collision with the passenger train. He was walking fast, with his head down, but looking to the north; he had to cross three tracks and the space between them before coming in contact with the train, which was on the fourth track. The evidence shows that if he had looked to the south, from which direction the train was coming, he could not have seen it until it was within 55 feet of him, on account of obstructions and a curve in the track. He walked straight ahead, apparently in a hurry, and was struck by the cylinder head of the locomotive, which is located on the engine about two feet to the rear of the cowcatcher or pilot.

Heriot Street Crossing where the boy was killed is a much-traveled thoroughfare; people continually walk across the tracks from one street to the other, going to and coming from the many meat markets located both on King Street and Meeting Street. And this crossing is a transfer place, for busses from the Belt Line to the Navy Yard. The congestion of travel by pedestrians at this crossing is most marked on Saturday afternoons. In fact the testimony indicates that at such times it is the busiest spot in Charleston County. The northbound train approached Magnolia Crossing around a wide curve, and neither the engineer nor the fireman could see the crossing at Heriot Street—which is about 55 yards beyond—until the train was within approximately 55 feet of it. It is admitted by the defense that on the afternoon in question, the passenger train was traveling at a speed of from 20 to 25 miles per hour. Witnesses for the plaintiff give a much greater speed. The engineer never

saw the boy at all, and the fireman saw him only an instant before he came into contact with the engine.

The engineer testified that he had been operating on this route for thirty years; that he knew the public path or walkway extending across the tracks, knew that pedestrians used this walkway continuously, and that on Saturday afternoons there was always a large crowd around the meat markets in that area. He admitted that it was impossible to stop the train at the crossing in question, at the rate he was traveling, within the distance of his visibility, or the visibility of the fireman, because of the curve and obstructions. There was a conflict in the evidence as to whether the statutory signals were given.

The negligence charged in the complaint against the defendant is the omission to give the statutory signals for the Magnolia Street Crossing, failure to keep a proper lookout, running at a dangerous rate of speed having due regard to the condition known to exist at the Heriot Street Crossing; failure to use reasonable diligence to stop the train in time to avoid the injury, and in driving and operating the locomotive through a thickly settled neighborhood, and over a much-traveled place, negligently, willfully and recklessly.

Plaintiff recovered a judgment in the lower Court in the sum of $1,650.00 for actual damages. The appeal to this Court is based upon the refusal of the trial Judge to direct a verdict in favor of the defendant, which was made upon the ground that the only inference to be drawn from the testimony was that plaintiff's intestate was fully capable of being guilty of contributory negligence, and the further inference that the deceased was guilty of gross contributory negligence which contributed to his death as a proximate cause, and without which the accident would not have occurred.

It is a well-settled rule in this jurisdiction that between the ages of seven and fourteen years a child is presumed incapable of exercising judgment and dis-

cretion requisite to charge it with contributory negligence, but that such presumption is *prima facie* only, and can be rebutted by evidence of capacity. *Tucker v. Buffalo Cotton Mills,* 76 S. C., 539, 57 S. E., 626, 121 Am. St. Rep., 957; *Crawford v. Charleston-Isle of Palms Traction Co.,* 126 S. C., 447, 120 S. E., 381; *Chitwood v. Chitwood,* 159 S. C., 109, 156 S. E., 179, 180.

The standard by which the conduct of an infant between seven and fourteen years of age is to be measured in determining the question of contributory negligence is, "not whether the child acted as an ordinarily prudent child of its age would have acted, but whether it acted as a child of its age, and of its capacity, discretion, knowledge, and experience would ordinarily have acted under the same circumstances." *Chitwood v. Chitwood, supra.*

The father and mother of the deceased boy testified that they lived about a block from the Heriot Street Crossing where the accident occurred; that the boy was familiar with the crossing, using it practically every day, and, in their opinion, he knew the danger of crossing the track in front of the train. He was four feet tall, puny and sickly from birth, and in all had attended school for about two years. The parents said he knew the scheduled time of the train, and that his eyesight and hearing were not defective. It may also be inferred that he possessed average intelligence for his years.

It may be taken for granted that Arthur Hollman, the deceased, knew how trains were operated and must be held to have known that if he was on the track when the engine came along it would strike and injure him. But while he knew the danger of being on the track when the engine passed, he may have lacked the discretion to appreciate the imprudence of attempting to cross the track under the circumstances which surrounded him. An adult person of ordinary prudence might not have attempted to cross the track as he did, nevertheless, if the boy lacked the

discretion, on account of his undeveloped judgment, to appreciate the danger, it would be a question for the jury to say whether his act would be excusable, from all of the evidence.

Contributory negligence may, under some conditions, be imputed to an infant between seven and fourteen years of age, as a matter of law, as where the evidence is not susceptible of different inferences regarding his care and prudence, and his capacity to exercise judgment and discretion. The fact, however, that the deceased in this case, a boy under ten years of age, was shown to be bright or of average intelligence, and that he was familiar with the railroad crossing in question, without more, is not sufficient to overcome the presumption of want of discretion which his age *prima facie* implies; for an infant may be all of this, and yet be so wanting in judgment and discretion as to make him rash and imprudent.

We cannot say as a matter of law that he was possessed of such intelligence, foresight and judgment as to charge him with contributory negligence in a case like the present. The universal rule is to leave such questions for the determination of the jury. It is only in exceptional cases that contributory negligence can be adjudged as a necessary legal conclusion from the facts found. See extended Annotation in 107 A. L. R., 4.

It is not to be expected that a boy nine years old will use the same degree of care and caution as a person of mature years nor does the law require it. The age, capacity, and discretion of the deceased to observe and avoid danger were questions of fact to be passed upon by the jury, and his responsibility was to be measured by the degree of capacity he was found to possess. It was for the jury to say whether the evidence was sufficient to overcome the rebuttable presumption of incapacity to be guilty of contributory negligence.

Of course, cases in which the decision turns on contributory negligence must be clearly distinguished from cases in which the decision turns on lack of actionable negligence on the part of the defendant. Where no actionable negligence is shown recovery is denied, notwithstanding the injured person, in view of his age and lack of discretion, was not chargeable with contributory negligence. *Porter v. Cook,* 196 S. C., 433, 13 S. E. (2d), 486.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM, MESSRS. ASSOCIATE JUSTICES BAKER and STUKES, and CIRCUIT JUDGE E. H. HENDERSON, ACTING ASSOCIATE JUSTICE, concur.