John A. PORTER, a minor, by his Guardian Ad Litem, Mrs. Alvarene Jones, Plaintiff,

v.

UNITED STATES of America, Defendant.

Cecil W. PORTER, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. Nos. 4341, 4352.

United States District Court, E. D. South Carolina, Columbia Division.

Feb. 4, 1955.

John Grimball and C. T. Graydon, Columbia, S. C., for plaintiffs.

N. Welch Morrisette, Jr., U. S. Atty., and Irvine F. Belser, Jr., Asst. U. S. Atty., Columbia, S. C., for defendant.

WILKIN, District Judge.

These two cases were combined for trial because they arose out of the same circumstances. The jurisdiction of this Court arises from the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2671 et seq. The plaintiff, John Porter, a minor about twelve years old, seeks damages for an injury which he received to his left hand from an explosion of a military trip-flare fuse. The plaintiff, Cecil Porter, father of John Porter, seeks damages for the loss which he suffered from the injury to his son. The complaints allege that the injuries, which the boy suffered, were caused by the negligence and carelessness of the agents and servants of the defendant. The essential facts of the case were not in dispute. The question presented to the Court is whether in view of the facts the defendant is legally liable for the damage which the plaintiffs suffered.

At the time of the accident, the plaintiffs lived near Fort Jackson. They still

live at the same place, and Cecil Porter is a Sergeant in the United States Army and stationed at Fort Jackson. The house in which the plaintiffs live is located in an area that was formerly used as a military camp, but which about seven years ago was turned back to civilian owners. Although the house which the plaintiff, Cecil Porter, rents is several hundred yards from the nearest house, there is a substantial civilian settlement and a trailer camp quite near. Many of the houses in the area adjoining the camp are occupied by families of army personnel.

Since the area adjoining Fort Jackson is not under military control or control of the Federal government, and is no part of any municipality, no system of garbage disposal was afforded the residents. A very general but bad practice grew up of disposing of household trash and garbage by dropping it along the roads and in the open country beyond the plaintiff's house. Some of the empty cans found in the area were the same as cans used by the army for military rations. Several hundred yards beyond the plaintiff's home, the plaintiff found certain military ordnance items, such as empty cartridge boxes, some boxes or cans containing explosive cartridges, fuses, cartridge belts, and other equipment for machine guns.

Across the road from where this ordnance material was found, the fuse was picked up which caused the injury to the plaintiff's hand. It was carried to the home of the plaintiffs, and the boy was allowed to play with it in the presence of his mother and grandfather. When he pulled a little ring on the fuse, it exploded. He was burned in the face and on the leg, and the thumb and the index finger of his left hand were blown away, together with the tip of the next finger. The evidence revealed that the boy had a supply of army ordnance material in a drawer in his home. The boy's father testified that he had given his son warning in regard to military explosives and

had told him that "he shouldn't pick up any of the stuff that he sees," and "told him that it was dangerous."

The boy's father and mother testified that they had seen military trucks carry "trash and stuff," pass their home and dump it in the area where other refuse had been deposited. On cross-examination, the plaintiff, Cecil Porter, was asked, "Did you ever see any trucks dumping explosives yourself?" And he answered, "No, sir, I never seen them dumping any explosives." There was no direct testimony to indicate how the ordnance material or the fuse, which caused the injury, reached the place where they were found.

The injury to the boy's hand occurred in June and, in the month of March prior, the plaintiff, Cecil Porter, had reported to military authorities at Fort Jackson that military material had been found near his home. An officer, familiar with ordnance material, made an investigation and himself found some gun powder and a live flare. He burned the gun powder and discharged the flare. His investigation, however, did not disclose where the material had come from.

The evidence tended to prove that the minor plaintiff was injured through the explosion of a flare fuse, found on privately owned land a mile or so from Fort Jackson, and that occasionally military trucks had been seen dumping trash and refuse in the area where the fuse had been found, and where extensive dumping of garbage and other refuse and trash was being indulged in by civilians living in the neighborhood. The plaintiffs argue that a very high degree of care is imposed upon the defendant because of the dangerous character of munitions of war. They argue that because the fuse was originally army equipment, it could not have been deposited where the plaintiff found it, except through some neglect or default of some agent or servant of the defendant, and that, because army trucks had been seen dumping trash, the men in charge of the

trucks were acting within the scope of their employment.

Counsel for the government on the other hand argue that there is no evidence that the fuse was placed at the roadside by an employee or agent of the defendant, and that there is no evidence that the men in charge of the government trucks were acting within the scope of their employment. They contend that the uncontroverted testimony of army officers reveals that if any army trucks carried trash to the area where the fuse was found, the men in charge of the trucks were acting without authority from the defendant and contrary to army regulations.

The Federal Tort Claims Act, upon which the plaintiffs base their cause of action, provides that the government can be sued only for injuries "caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

■ Since the decision by the Supreme Court in the case of Dalehite v. United States, 346 U.S. 15, 73 S.Ct. 956, 972, 97 L.Ed. 1427, there can be no assumption that the government is liable under the Federal Tort Claims Act merely because it may be the owner of an " 'inherently dangerous commodity' or property," or engaged "in an 'extra hazardous' activity."

The decision of the Fifth Circuit Court of Appeals in United States v. Inmon, 205 F.2d 681, applied the ruling in the Dalehite case to cases of injury resulting from military munitions found on lands used by the army for training purposes.

■ The law of South Carolina provides that before a master is responsible for the torts of his servant, the servant must not only be acting in the course of his employment, or within the scope of his authority, but must be actually engaged in his employer's business at the time of the injury. Such being the law of this state, it was absolutely necessary for the plaintiffs to prove that the fuse, which caused the injury, was deposited by the roadside by agents or servants of the defendant, actually engaged at the time in the work of the defendant.

These cases now before this Court are controlled absolutely by the principles announced in the case of Rolon v. United States, D.C., 119 F.Supp. 432, and the statements made by the Court, at page 434, apply specifically to the cases presented here.

Cases cited by counsel for the plaintiffs can be distinguished from the cases on which this decision is based. The decision in the case of Stewart v. United States, 7 Cir., 186 F.2d 627, was based upon the defendant's failure to comply with an Illinois Statute, S.H.A. ch. 93, § 143 et seq., which has no application here. And in the case of Beasley v. United States, D.C., 81 F.Supp. 518, a senior military officer saw the boys who were injured tampering with the shell, which exploded and caused their injuries. The officer had made no attempt to stop the dangerous activity of the boys.

■ Not only is this Court without authority to presume negligence on the part of the defendant but, if presumptions were to be indulged, the greater part of the evidence in the case would support the presumption that the explosive object was thrown at the roadside by "brass pickers," or other persons who acquired the dangerous object contrary to law and in violation of army regulations. The evidence fails completely to show not only actionable negligence on the part of government agents, but fails to show any plausible reason for the dumping of such military material at the place where it was found.

■ As a further defense against the claims of the plaintiffs, the defend-

ant alleges that the plaintiffs were guilty of contributory negligence. Whether the plaintiff, John Porter, can be held accountable for contributory negligence depends not so much on his age as on his capacity, discretion, knowledge, and experience. Hollman v. Atlantic Coast Line R. Co., 201 S.C. 308, 22 S.E.2d 892; Chitwood v. Chitwood, 159 S.C. 109, 156 S.E. 179. John Porter was eleven and one-half years old at the time of the accident. He had had experience with military equipment. He was a boy of unusual capacity and knowledge. Furthermore, he had been cautioned by his parents and warned to avoid any contact with army munitions. John violated instructions and took a chance with an object which he had been warned against and which, from past experience, he should have known might be dangerous. His conduct constitutes contributory negligence and, under the law, defeats his right of recovery if otherwise he had a right of recovery.

The plaintiff, Cecil Porter, is also guilty of contributory negligence because he did not follow up and enforce his instructions to his son. He allowed the son to accumulate in the home a cache of military objects. The amount of military material found in the home after the accident would indicate a negligent attitude on the part of the boy's parents, which contributed to the boy's injury. Because John was a good boy, his parents allowed him too much liberty with army material and, under the law, their indulgence precludes recovery for the deplorable and regrettable accident.

The government is not an insurer of the safety of its citizens. It has consented to be sued for the negligence of its employees and agents, but it can be held liable only upon proof of negligence when the injured party has not proximately contributed to his own injury.

Judgment will be entered for the defendant.