**Neal Ray MEDLIN by His Guardian ad Litem, Burley G. Medlin, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Frances S. MEDLIN, Burley G. Medlin and Neal Ray Medlin by His Guardian ad Litem, Burley G. Medlin, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. Nos. 4486, 4967.**

United States District Court
W. D. South Carolina,
Greenville Division.

Heard June 9, 1965.

Decided Aug. 9, 1965.

---

Benjamin A. Bolt and C. Ben Bowen, of Bolt & Bowen, Greenville, S. C., for plaintiffs.

John C. Williams, U. S. Atty., and Albert Q. Taylor, Jr., Asst. U. S. Atty., Greenville, S. C., for defendant.

HEMPHILL, District Judge.

Consolidated actions by the plaintiffs against defendant for damages under the Federal Tort Claims Act[1] for personal injuries to the plaintiff Neal Ray Medlin and for medical expenses and loss of wages and services by said plaintiff's parents, Burley G. Medlin and Frances S. Medlin, alleged to have been sustained by plaintiff Neal Ray Medlin as a result of an explosion of a pyrotechnic device, owned by agents of defendant, on September 27, 1963. Each of the plaintiffs allege that the damages sustained by them were caused by certain negligent acts of defendant's Army personnel acting within the scope of their duties as such employees of defendant. Heard by the Court without a jury.

Upon conclusion of plaintiffs' evidence, defendant moved for an involuntary dismissal on the ground that plaintiffs had shown no right to relief[2], which motion was taken under advisement by the Court; upon conclusion of defendant's presentation, defendant made timely motion for a directed verdict which is treated herein.

Some time prior to July 25, 1963, the Army, planning to engage in maneuvers in Laurens County, South Carolina, to be known as Swift Strike No. III, obtained permits from property owners to go across and over their lands during the period July 25, to August 25, 1963. Plaintiff Frances S. Medlin executed one of these permits, which is in evidence. The permit gave to the government the right, among other things, to construct camp sites. It provided that the government would have the right for a reasonable time after expiration of the permit to remove all property placed thereon, and that all materials used or placed on the property were to *remain the property of the government*. A camp site was located across the highway immediately in front of the Medlin home, approximately 150 yards away.

On September 27, 1963, Neal Ray Medlin, then 10 years and nine months of age, while playing near his home found, on property other than that of his parents, a M–110 gunflash simulator, a United States Army pyrotechnic device, left by Army personnel who had recently completed full scale maneuvers in the area. Neal Ray took the device to a cousin, Keith Davenport, about 18 years of age, who attempted to open it and being unsuccessful, threw it into the air and onto the paved roadway in which they were standing. Neal Ray then threw it into the air and it came apart upon impact, causing the contents to spill out onto the road. Keith then asked Neal Ray for matches, and when he answered that he had none, Neal Ray volunteered to obtain some at his home, some 350 feet away. Upon Neal Ray's return with matches, Keith lit a leaf and stuck it into the powder from the device with no results. Neal Ray then, with Keith looking on, inserted a burning leaf into the powder, kneeling about two feet from the substance. The powder then sparked, whereupon Keith attempted to pull Neal Ray away, and it ignited in a

---

1. Title 28 U.S.C. § 2671 et seq.

2. Rule 41(b) Fed.Rules of Civil Pro.

flash which burned Neal Ray about the face and body.

It is not disputed that the simulator was the property of the government and was left by the Army personnel when they abandoned the camp. Plaintiffs offered other objects used by the Army during the Swift Strike exercises, such as a belt of blank cartridges, boxes of blank cartridges, flares and explosives which had been left unguarded upon the premises with no warning sign.

Army personnel knew that children visited this camp site. Neal Ray testified that he visited with the soldiers during the maneuvers. He also testified that he had played in this area all of his life. There were no warning signs posted at or near the camp site warning children, or anyone, of the danger of the objects left there. Neal Ray Medlin had been directed by his father to turn over any ammunition or items found by him to his father. He had on occasion carried water to Army personnel and was acquainted with the guns and implements in their possession.

This Court has jurisdiction of the subject matter and the parties.[3]

The United States is not liable in the absence of fault for injuries resulting from an "ultra hazardous activity" or an "inherently dangerous condition." Dalehite v. United States, 346 U.S. 15, 44–45, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); Voytas v. United States, 256 F.2d 786 (7 Cir. 1958); United States v. Inmon, 205 F.2d 681 (5 Cir. 1953); Porter v. United States, 128 F. Supp. 590, 593 (E.D.S.C.1955) aff'd 228 F.2d 389 (4 Cir. 1955). Nor is the mere ownership of explosives sufficient, regardless of the dangerous nature.

But, aside from the inevitable conclusion that these were dangerous devices, as shown by the incident here, the record reveals these instructions were given to the soldiers on the maneuvers:

"3. Individual Instructions.[4] a. Pyrotechnic Devices. Each soldier should be particularly careful not to discard or leave behind any blank ammunition, artillery simulators or other pyrotechnic or explosive devices. These devices are extremely dangerous, especially to children, and could cause death or serious bodily injury."

Also in the instructions to Commanders, No. 2, Subsection g:

"Area Police. Commanders of all echelons will insure that all areas used by their units are properly policed, that blank ammunition, artillery simulators or other pyrotechnic or explosive devices are not discarded or left behind, and that foxholes, trenches, latrines, and garbage pits within the area are properly filled and marked."

This Court concludes that there is sufficient evidence of failure of Army personnel to properly police, or clean up, the area, upon completion of maneuvers. If such action were not proper, expected, or required, maneuver areas would be constant, conscious, arenas of danger and injury. Neither the law, nor custom, expects or condones such a policy.

This Court reviews similar cases.

In Parrott v. United States, 181 F. Supp. 425 (S.D.Calif.1960) the district court decided that upon lands once leased

---

3. Title 28 U.S.C. § 1346(b) provides: "Subject to the provisions of chapter 171 of this title, the district courts, together with the United States District Court for the District of the Canal Zone and the District Court of the Virgin Islands, shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

4. From the general instructions which appear in the Answer to Interrogatories.

by the Government, it could be considered a "possessor" of land for purpose of attractive nuisance doctrine, and that it would be liable for injuries caused by explosives left upon its former leasehold. The property was released by the Government to its private owners in 1947 and the Government had been out of possession since that time. The accident and injury to the Parrott child and others occurred on February 12, 1957.

"The boys took the grenade home, and, after some futile attempts to take it apart, plaintiff Alvy Parrott threw it upon the pavement. It immediately exploded, inflicting various injuries, all serious, upon the three boys. Plaintiffs base their case upon the assertion that Army personnel failed to properly police or de-dub the firing range prior to its return to civilian use. The court finds that this is true. 'The risk incident to dealing with * * * explosive * * * matters * * * requires a great deal of care to be exercised. In other words, the standard of care required of the reasonable person when dealing with such dangerous articles is so great that a slight deviation therefrom will constitute negligence.' "

181 F.Supp. at 427.

This Court, sitting as a trier of fact, is mindful of its responsibility. In United States v. Stoppelman, 266 F.2d 13, at page 18 (8th Cir. 1959), in affirming an award against the United States for injuries sustained by a minor, who after Marine Corps maneuvers picked up unexploded live blank cartridges left on the ground and which were exploded by the firing of a BB pellet from an air rifle by plaintiff and others, the Court stated:

"Certainly the negligence of defendant in leaving these dangerous explosives exposed and accessible to children and those of immature judgment with knowledge that they were so exposed constituted a substantial factor in bringing about plaintiff's injuries."

Stewart v. United States, 186 F.2d 627 (7th Cir. 1951), was an action to recover for damages to two minors against the United States under the provisions of the Tort Claims Act. The damages resulted from injuries sustained by boys from the explosion of a hand smoke grenade which had been a part of a stock of grenades maintained by the Army at Fort Sheridan, Illinois. Three high school boys entered the military reservation where there was a large sign posted on the roadway leading to the magazine area which read, "Danger Military Explosives. This Road Closed to Public Traffic." Another sign on the gate of the magazine enclosure read, "Keep out. No Smoking, No Matches, No Lighters Permitted in This Area." The three boys climbed the fence, obtained these grenades and one was left near the home of the injured boys. The Court held the government was liable and at page 633 said:

"Turning to the instant situation, could the government reasonably have foreseen or anticipated that boys might enter the Magazine Area and remove grenades? A negative answer to this question requires a disclaimer of all knowledge of the proclivities possessed by the ordinary boy for discovery, exploration and the satisfaction of a curiosity oftentimes easily aroused. What could be more alluring or fascinating to a boy or group of boys, whether of tender or more mature age, than a pile of boxes in plain sight, labeled 'Fireworks'? Presented with a situation of such appealing nature they did what might reasonably be anticipated of normal boys —they climbed over the fence and carried away some of these dangerous instrumentalities. Such a result could have been readily foreseen by the exercise of reasonable diligence on the part of those in charge. The government argues that the three boys who took the grenades were trespassers at the time they entered the reservation. The record, how-

ever, does not support this contention. They were on the reservation, as they had been on previous occasions, and as other members of the public had been, with the implied and perhaps express consent of the government. True, when they scaled the fence and entered the Magazine Area they were trespassers, and by carrying away the grenades committed a theft, but the government cannot disclaim responsibility for such trespass because the boxes containing the grenades with their attractive labeling were in plain sight before and at the time the boys climbed the fence, and the character of the fence, as already noted, was such as to present little if any obstacle to the boys' activities."

█ Was minor plaintiff guilty of contributory negligence? Under South Carolina law there is a prima facie presumption that an infant between the ages of seven and fourteen is incapable of contributory negligence. Chitwood v. Chitwood, 159 S.C. 109, 156 S.E. 179. Crawford v. Charleston-Isle of Palms Tractor Co., 126 S.C. 447, 120 S.E. 381. Tucker v. Buffalo Cotton Mills, 76 S.C. 539, 57 S.E. 626.

█ A child between the ages of seven and fourteen years is presumed to be incapable of exercising judgment and discretion requisite to charge him with "contributory negligence", but such presumption is prima facie only, and may be rebutted by evidence of capacity. Hollman v. Atlantic Coast Line R. Co., 201 S.C. 308, 22 S.E.2d 892.

Beasley v. United States,[5] was an action for injuries to a minor ten years old under somewhat similar circumstances. There the District Judge disposed of the defense of contributory negligence by the minor plaintiff in the following language at page 526 of 81 F.Supp.:

"It is urged that the plaintiff, young Beasley, was most negligent and, even if the government were negligent Beasley's acts contributed to the injuries as the proximate cause. But contributory negligence by a minor of tender years is not a defense."

In Franks v. Southern Cotton Oil Co., 78 S.C. 10, 58 S.E. 960, 12 L.R.A.(N.S.) 468, the South Carolina Supreme Court, after reviewing the authorities on duty of owners and occupiers of property, said:

"[O]ne who artificially brings or creates upon his own premises any dangerous thing which from its nature has a tendency to attract the childish instincts of children to play with it is bound, as a mere matter of social duty, to take such reasonable precautions as the circumstances admit of, to the end that they may be protected from injury while so playing with it, or coming in its vicinity.

\* \* \* \* \* \*

Under the caption of 'Liability for Injuries to Children,' the author, in 1 Thompson on Neg. § 1026, thus speaks in strenuous language of the doctrine that liability extends only to wanton injuries: 'One doctrine under this head is that if a child trespass upon the premises of the defendant, and is injured in consequence of something that befalls him while so trespassing, he cannot recover damages unless the injury was wantonly inflicted, or was due to the recklessly careless conduct of the defendant. This cruel and wicked doctrine, unworthy of a civilized jurisprudence, puts property above humanity, leaves entirely out of view the tender years and infirmity of understanding of the child, indeed his inability to be as a trespasser, in sound legal theory, and visits upon him the consequences of his trespass, just as though he were an adult, and exonerates the person or corporation upon whose property he is a trespasser from any duty to-

5. 81 F.Supp. 518 (E.D.S.C.1948).

wards him which they would not owe under the same circumstances towards an adult."

The Attractive Nuisance doctrine, recognized by South Carolina since the famous turntable case of Bridger v. Asheville & S. Railroad Co., 25 S.C. 24, has remained the law in this jurisdiction. The rule has been that the owner and occupier of real property owes a different standard of duty to children than to an adult person. See the excellent discussion thereabout by Justice Gary in Franks v. Southern Cotton Oil Co., supra.

In this case the personnel of Swift Strike III were charged with the duty to safeguard the public but they took no precaution to prevent injury to the public, especially children.

The Army personnel connected with Swift Strike III were negligent in leaving exposed and unguarded these dangerous explosives readily accessible to youngsters, and such negligence was the proximate cause of the injuries sustained by the plaintiff, Neal Ray Medlin. Having reached this conclusion it follows that Neal Ray Medlin was not guilty of contributory negligence.

It is hardly necessary to consider the other two defenses interposed by the government. The defense of contributory negligence of a third person and plaintiff's sole negligence will be disposed of together. There are a number of South Carolina cases on this question. An examination of these cases reveals strong support for plaintiff's position.

The intervening act of a third person which concurred with the negligence of another does not relieve defendant of liability. This principle is clearly and forceably stated in a recent South Carolina decision, Brown v. National Oil Co., 233 S.C. 345, 105 S.E.2d 81. The Court noted:

"The authorities agree that if a person's negligence is a proximate cause of an injury to another, the fact that the negligence of a third party concurred with his negligence does not relieve him from liability.

Ayers v. Atlantic Greyhound Corp., 208 S.C. 267, 37 S.E.2d 737. This principle is stated in Restatement of Torts, Section 447 as follows:

'The fact that an intervening act of a third person is negligent in itself or is done in a negligent manner does not make it a superseding cause of harm to another which the actor's negligent conduct is a substantial factor in bringing about, if

'(a) The actor at the time of his negligent conduct should have realized that a third person might so act, or

'(b) a reasonable man knowing the situation existing when the act of a third person was done would not regard it as highly extraordinary that the third person had so acted, or

'(c) the intervening act is a normal response to a situation created by the actor's conduct and the manner in which it is done is not extraordinary negligence.' "

In that case the action was by a gasoline station operator to recover damages resulting from a fire allegedly caused by negligence of the oil company and others. The plaintiff died and his widow was appointed administratrix of his estate and substituted as party-plaintiff. The Court after a review of the authorities said it was a question for the jury as to negligence on the part of the oil company in failing to provide adequate vents for underground gasoline storage tanks, thereby causing concentration of gas fumes about a service station while such tanks were being filled, and as to whether such negligence was a proximate cause of a fire which occurred after a bystander struck a match to light a cigarette.

In Locklear v. Southeastern Stages, Inc., 193 S.C. 309, 8 S.E.2d 321:

"The test, therefore, by which the negligent conduct of the original wrongdoer is to be insulated as a matter of law by the independent act of another, is whether the intervening act and the injury resulting therefrom are of such character that

the author of the primary negligence should have reasonably foreseen and anticipated them in the light of attendant circumstances. The law requires only reasonable foresight, and when the injury complained of is not reasonably foreseeable, in the exercise of due care, there is no liability. One is not charged with foreseeing that which is unpredictable or that which could not be expected to happen."

█ As to consequences that should have been foreseen, Hardy v. United States, 187 F.Supp. 756, 761 (E.D.S.C. 1960) points out that under South Carolina law,

" 'it is not necessary to show that a person charged with negligence should have foreseen the particular consequence or injury that resulted. It is enough that he should have foreseen that his negligence would probably result in injury of some kind to some one.' "

In Joiner v. Fort, 226 S.C. 249, 254, 84 S.E.2d 719, the South Carolina Supreme Court notes that:

" 'Liability for negligence is not predicated upon necessity that the wrongdoer should foresee that an injury would result from his wrongdoing and it is sufficient that in view of all the attendant circumstances, he should have foreseen that his negligence would probably result in injury of some kind to some one.' "

The negligence or recklessness to render a person liable, need not be sole cause of injury but only a proximately concurring cause. Sanders v. Green, 208 F. Supp. 873, 876 (E.D.S.C.1962) ; Shearer v. DeShon, 240 S.C. 472, 126 S.E.2d 514, 519.

█ Using the principles of these cases as a yardstick this Court finds nothing in the record to support the defense of contributory negligence of the third person or the sole negligence of a third person intervening as the proximate cause of plaintiff's injuries. There-

fore, the defendant is liable for the injuries to the plaintiff.

The only issue yet to be determined is the amount of damages to be awarded. The Court will consider the injuries and damages to Neal Ray Medlin. There are no scales to weigh human suffering, no measure by which pecuniary compensation for personal injuries can be accurately ascertained, nevertheless an appropriate and reasonable amount, an exact figure in dollars and cents, must be determined. It will be necessary to review in some detail the lay and medical testimony as to the nature and extent of plaintiff's injuries.

The attending physician, Dr. W. Jordan Holloway, testified when he first saw plaintiff he was in a moderate state of shock and quite a bit of pain. He administered a sedative and had him transferred to Self Memorial Hospital at Greenwood, South Carolina ; that he had flash burns of the face, head, neck, right upper extremities, both knees and the left thumb. The hair of his head was singed off, eyebrows and eyelashes were singed off. He testified also that these burns were first, second and third degree burns ; that the third degree burns left more scarring, and that he sustained permanent disfigurement from scarring and discoloration, and that his right ear was smaller than the left. There was damage to the blood vessels. The plaintiff was in the hospital from September 27, 1963 to October 14, 1963 and under the care of Dr. Holloway through December 16, 1963.

The government had Dr. William H. Amapacher examine the plaintiff and he testified by deposition. It is clear from his testimony that plaintiff has some disfigurement from scarring and discoloration. He saw plaintiff on December 31, 1964 and stated that it was too early to evaluate the extent of his injuries and that he would be in a better position to evaluate his injuries after he had been exposed to the sun and after he had exercised.

The extent of injuries evidenced by the photographs introduced by plaintiffs

appear to have been minimized by the medical treatment received. Neal Ray was hospitalized from September 27, 1963, until October 14, 1963, and upon his release was cared for by his parents at home with recurring visits to his physician until he was dismissed (as fully recovered) by Dr. Holloway on December 16, 1963. While it was evident to the court that Neal Ray made a remarkable recovery, the testimony of plaintiffs' witnesses supports this conclusion. Neal Ray testified that he could do anything now (after recovery) that he could do before the accident, and that his only difficulty is coldness of his right ear in cold weather. His parents testified that cold weather caused blueness to the ear. Although his parents testified that Neal Ray was somewhat more nervous and had not done as well in school, this nervousness was described as no more than his actions when he was testifying, and Neal Ray stated on deposition that his school work was about the same as before the accident, and Neal Ray was promoted at the conclusion of the school year following his accident.

In short, Neal Ray suffered first and second degree burns over his face and arm from the shirtsleeve point down to and including the wrist and hand with third degree burns over the volar surface of the thumb and wrist, was hospitalized in a state of shock and given treatment for 18 days at the hospital with home care and outpatient treatment until his release on December 16, 1963. All medical testimony indicates that further treatment will not be required and that the only after effects are some depigmentation of the burned area, a smallness of the right ear, and scarring over the volar regions of the arm, wrist and thumb.

The Court finds that the acts of the Army personnel as hereinabove found were the proximate cause of the injuries and damages to the plaintiff; that as result of said injuries the plaintiff, Neal Ray Medlin, has sustained actual damages in the amount of Ten Thousand Dollars.

This opinion so far has dealt entirely with the responsibility of the defendant to the plaintiff, Neal Ray Medlin. Now to be considered is the second case of Frances S. Medlin and Burley G. Medlin, parents of the injured child, against the United States. The parents have a right of action for loss of services, expenses incident to their child being injured, including medical care, hospital treatment, physicians' and nurses' fees, and other expenses that have resulted; also the future care and treatment.

It is not necessary to review the applicable testimony as it applies with equal force to their case and makes out a satisfactory case of negligence on the part of the defendant Army personnel and warrants a recovery by these plaintiffs. Defendant does not allege or assert any negligence on the part of the parents.

The father testified he had paid to Self Memorial Hospital $413.10; to Dr. W. J. Holloway $102.00; to Dr. Paul Pritchard $3.00; Dr. D. H. Williams $35.00; Dr. Clarence Workman $25.00 and to Parker-White Ambulance Service $6.00. He also testified the condition of his son was such that someone had to be with him at the hospital and that it required that he lose two weeks wages at $78.00 per week, making a total lost wages of $156.00. The mother testified she nursed Neal Ray four weeks and lost in wages $200.00. The fact that the physician selected by the defendant to examine the injured child could not evaluate the extent of his injuries at the time of the trial, the Court feels that these people are entitled to more than the actual losses at the time of the trial. I find that these plaintiffs should recover against the defendant the sum of Twenty-Five Hundred Dollars.

Attorneys for the plaintiffs, Benjamin A. Bolt and C. Ben Bowen, of Greenville, South Carolina, are entitled, under 28 U.S.C. § 2678, to attorneys' fees of twenty per cent of the amount of this recovery for services rendered in each

case, to be paid out of the judgments rendered against the government, and

Let judgment be entered, accordingly, by the Clerk.

And it is so ordered.