15052

LOCKLEAR v. SOUTHEASTERN STAGES, INC., *ET AL.*
SMOAK v. SAME

(8 S. E. (2d), 321)

February, 1939.

*Mr. Hugh O. Hanna,* for appellants, cites:

*Messrs. Murdaugh & Murdaugh,* for respondents,

April 2, 1940.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

These two cases, in which the same defendants are involved, were consolidated for trial; one opinion will dispose of the appeal in both cases.

The litigation arises out of an automobile accident which occurred on South Carolina State Highway No. 28, in the unincorporated village of Cummings, in Hampton County, about 9:30 o'clock p. m., on September 18, 1937. The plaintiff, Locklear, sues for the recovery of damages on account of injuries which he received. Smoak, as administrator of the estate of Reubin Capers, sues for the benefit of the mother of Reubin Capers, on account of his death, which resulted from the same accident.

On the day in question a passenger bus owned by the defendant, Southeastern Stages, Inc.—which we shall hereafter refer to as the bus company—and driven by C. W. Hughes, its agent, was enroute from Varnville to Cummings, and points beyond. After the bus entered the en-

virons of the Town of Cummings, four Negroes, who desired to become passengers on the bus, and who were standing about 300 yards beyond it, signaled it to stop. The driver of the bus immediately reduced his speed and blew his horn, indicating that the bus would stop at the point desired. It proceeded on, slowing down gradually, and came to a stop on the western side of the highway opposite to a ditch, with the two wheels on the left side of the bus on the paved portion of the highway, and the two wheels on the right side of the bus on the dirt shoulder. The bus was eight feet wide. Five feet of its width occupied the dirt shoulder, and three feet were upon the pavement. At this point the paved road is eighteen feet wide.

The dirt shoulder running along the western side of the paving where the bus stopped is about seventeen feet in width. It was smooth and level for six or seven feet contiguous to the paved surface, after which it gradually sloped downward toward the ditch; and became rougher. The ditch was eight feet wide, and was filled with water to a depth of three feet. It runs alongside the highway right-of-way for a considerable distance beyond the Town of Cummings. The entire width of the highway right-of-way is seventy-five feet. The four Negroes who wished to board the bus, including the plaintiff, Locklear, and Capers, the deceased, were standing between the bus and the ditch. When the bus stopped, the driver opened the door on his right, and as the Negroes were in the act of getting aboard, a Chevrolet automobile, coming from behind at a high and reckless rate of speed, suddenly swerved to its right, and ran into the group of Negroes standing near the bus, painfully injuring Locklear and killing Capers. This automobile was occupied by five Negroes, including the driver, and after striking the Negroes proceeded about thirty feet beyond the bus, coming to rest on the ditch bank.

When the driver received the signal to stop the bus, he gradually pulled to the right of the road, and switched on

his inside lights. On its front the bus was equipped with two headlights, five markers, and two red lights, and at the rear there were two reflectors and two rear lights, which were connected with the stop lights. All of these lights were burning. The highway is straight and level, and the bus, with these lights burning, could be seen from both directions for a distance of more than 300 yards. To the left of the stationary bus there was an open space of from 35 to 40 feet, upon which other motor vehicles upon the highway might pass. There was testimony that another automobile, coming from the direction opposite that in which the bus was traveling, passed abreast of the bus as the colliding automobile turned to its right and struck the Negroes standing between the bus and the ditch. The driver of this passing automobile testified, however, that the Chevrolet had room to pass on the left of the bus if it had not been going at such a high and reckless rate of speed.

The plaintiff, Locklear, and Capers' administrator sued the bus company and its insurance carrier, the defendant, Commercial Casualty Insurance Company, claiming that the injuries to the plaintiff and the death of Capers were proximately due to the negligence of the bus company. The plaintiffs contend that the driver of the bus was negligent in stopping partly on the paved portion of the highway, and thus partially blocking the road—contrary to the statute—instead of stopping completely off of the pavement, and altogether on the shoulder.

The specifications of negligence charged are:

(a) In stopping the motor bus upon the paved part or main traveled part of the highway, when it was practical to stop the bus completely off of such part of said highway;

(b) In stopping the bus upon the highway without leaving a clear and unobstructed width of at least twenty feet to its left for free passage of other motor vehicles traveling thereon;

(c) In failing properly to establish and maintain a suitable and safe place at said point on the said highway at which to take up passengers; and

(d) In stopping said bus at a place where it was inherently dangerous so to do.

The trial resulted in a verdict in favor of Locklear in the sum of $50.00, actual damages; and a verdict in favor of the administrator of Capers in the sum of $500.00. The main assignment of error is that the lower Court erred in refusing to grant a motion for a directed verdict in favor of the appellants. They contend, first, that the driver of the bus was not guilty of any negligence; and, second, that his negligence, if any, was not the proximate cause of the injuries and death sustained by the plaintiffs, but that the negligence of the Negro driver of the Chevrolet automobile was the sole proximate cause thereof.

The statute invoked was enacted in 1937, Acts 1937, 40 St. at Large, pages 222-235, and its pertinent parts are found on pages 223 and 231.

Section 26 on page 231 of the Act provides: "Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least 20 feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of 200 feet in each direction upon such highway.   *   *   * "

On page 223, the Act defines a "business district" as being that territory contiguous to and including a highway when fifty per cent. or more of the frontage thereon for a distance of 300 feet or more is occupied by buildings in use for business. And defines a "residence district" as being

the territory contiguous to and including a highway not comprising a business district when the property on such highway for a distance of 300 feet or more is in the main improved with residences.

The appellants also contend that the only reasonable inference to be drawn from the testimony is that the place where the bus stopped was in a business or residential district as those terms are defined by the Act, and therefore that the Court erred in refusing to charge the jury as it was requested to do, that subdivision (a) of Section 26 did not apply in this case.

The trial Judge held that under the evidence he could not say as a matter of law that the bus was or was not stopped in a business or residence district, but that he would submit the issues to the jury, and charge them the law as to what constitutes such a district, within the meaning of the statute. The testimony on this point, which we deem it unnecessary to review, was conflicting and somewhat indefinite. While some of it tended to support the contention that the place where the bus stopped is a business district, there was other testimony which tended to show the contrary. "It is frequently necessary for the Judge to charge the law and allow the jury to apply it according to the facts as they find them. It is necessary in both the criminal and civil Courts." *Newsom v. F. W. Poe Manufacturing Co.*, 102 S. C., 77, 86 S. E., 195, 198.

We are satisfied that the issue was one for the jury, under proper instructions from the Court, and it is clear that by its verdict the jury found against the appellants on this point. We therefore proceed to pass upon what we regard as the major issue presented, and that is whether the Court erred in refusing to direct a verdict in favor of the appellants on the issue of negligence.

It is, of course, axiomatic that the violation of a statute, while negligence *per se,* will not support a recovery for damages unless such violation proxi-

mately caused or contributed to the injury complained of. *Crawford v. Atlantic Coast Line R. Co.,* 178 S. C., 264, 184 S. E., 569.

The 1937 Act which we have quoted in part, provides that no person shall stop any vehicle upon the paved or improved or main traveled part of the highway when it is *practical* to stop such vehicle off of such part of said highway. The testimony is uncontradicted that the shoulder of the road where the bus stopped was wet, and although there was sufficient width from the edge of the pavement to the edge of the eight-foot ditch to accommodate the bus, there was evidence offered by both sides that it would have been dangerous to passengers who might be discharged or taken on board, for the bus to approach any nearer to the ditch than it was.

In our opinion, the word "practical" is not to be given too literal a construction or interpretation. It does not necessarily mean that which is physically possible or mechanically practicable, but rather that which is possible of reasonable performance, including the element of reasonable safety under the existing circumstances.

However, in the case at bar, even if it be assumed for the purpose of argument that the bus was stopped on the highway in violation of the statute, we are of the opinion that such was the remote cause, and that the negligence of the driver of the Chevrolet automobile was the sole and proximate cause of the injuries here complained of.

In the Chevrolet car there were five Negroes, two on the back seat, and three on the front seat. This car had followed the bus for a distance of six or seven miles before reaching Cummings, and had maintained a variable distance behind it of about 300 yards. Several of its occupants had on more than one occasion remonstrated with the driver about his excessive speed, and had importuned him to drive with greater care. Three of them testified that as they reached the village of Cummings they noticed that the bus

was gradually coming to a stop. One of them told the driver, Clarence Youmans, whose nickname was "Son": "Look-out, Son, that bus is stopped; you must not drive so fast because I do not like to drive fast." The driver's reply was: "Well, Cousin Sallie, don't you worry, because I know what I am doing, I have been driving a car for very near fifteen years, and I never have had a wreck in my life." And the witness replied: "Son, please don't drive so fast."

These witnesses testified that the bus, with its lights burning, including the stop lights and the extra lights on the back, was plainly visible for a distance of 300 yards, but that the driver of the Chevrolet did not slow up, but drove straight on. As he reached the bus, which was then stationary on the highway, he swung the car around to the right, missed the bus, but drove into the group of Negroes standing alongside of it.

These Negro witnesses also said that there was ample room for their car to have passed the bus on its left, and they testified that they did not see any car approaching from the opposite direction at that time.

We may say in passing that the driver of the Chevrolet car was not called as a witness. He had previously pleaded guilty to the charge of involuntary manslaughter in connection with the accident, and had served a term of imprisonment therefor. These witnesses likewise testified that before their car reached the bus they could plainly see the group of persons with whom their car collided, standing between the bus and the ditch. There is no testimony that the bus driver knew that the car was behind him. Nor is there testimony that Youmans, the driver of the Chevrolet, ever applied his brakes, or at any time reduced his speed prior to the collision.

Our decisions are all to the effect that liability exists for the natural and probable consequences of negligent acts or omissions, proximately flowing therefrom. The intervening negligence of a third person will not

excuse the first wrongdoer, if such intervention ought to have been foreseen in the exercise of due care. In such case, the original negligence still remains active, and a contributing cause of the injury. The test is to be found in the probable consequences reasonably to be anticipated, and not in the number or exact character of events subsequently arising. *Johnston v. Atlantic Coast Line R. Co.,* 183 S. C., 126, 190 S. E., 459; *Crawford v. Atlantic Coast Line R. Co., supra; Tobias v. Carolina Light & Power Co.,* 190 S. C., 181, 2 S. E. (2d), 686.

We have held that when the negligence appears merely to have brought about a condition of affairs, or a situation in which another and entirely independent and efficient agency intervenes to cause the injury, the latter is to be deemed the direct or proximate cause, and the former only the indirect or remote cause. *Carter v. Atlantic Coast Line R. Co.,* 109 S. C., 119, 95 S. E., 357, 11 A. L. R., 1411; *Martin v. Southern Ry.,* 77 S. C., 370, 58 S. E., 3, 122 Am. St. Rep., 574; *Miller v. Atlantic Coast Line R. Co.,* 140 S. C., 123, 138 S. E., 675.

Mr. Wharton, in his outstanding work on negligence, says (Section 134) : "Supposing that if it had not been for the intervention of a responsible third party the defendant's negligence would have produced no damage to the plaintiff, is the defendant liable to the plaintiff? This question must be answered in the negative, for the general reason that causal connection between negligence and damage is broken by the interposition of independent responsible human action. I am negligent on a particular subject-matter. Another person, moving independently, comes in, and either negligently or maliciously so acts as to make my negligence injurious to a third person. If so, the person so intervening acts as a nonconductor, and insulates my negligence, so that I cannot be sued for the mischief which the person so intervening directly produces. He is the one who is liable to the person injured."

And see the leading and oft-cited cases of *Milwaukee & St. P. R. Co. v. Kellogg,* 94 U. S., 469, 24 L. Ed., 256, 259, and *Harrison v. Berkeley,* 1 Strob., 525, 47 Am. Dec., 578.

The test, therefore, by which the negligent conduct of the original wrongdoer is to be insulated as a matter of law by the independent negligent act of another, is whether the intervening act and the injury resulting therefrom are of such character that the author of the primary negligence should have reasonably foreseen and anticipated them in the light of attendant circumstances. The law requires only reasonable foresight, and when the injury complained of is not reasonably foreseeable, in the exercise of due care, there is no liability. One is not charged with foreseeing that which is unpredictable or that which could not be expected to happen. *Horne v. Atlantic Coast Line R. Co.,* 177 S. C., 461, 181 S. E., 642; *Johnston v. Atlantic Coast Line R. Co., supra; Keel v. Seaboard Air Line Ry.,* 122 S. C., 17, 114 S. E., 761; *Harrison v. Berkeley, supra; Cooper v. Richland Co.,* 76 S. C., 202, 56 S. E., 958, 10 L. R. A. (N. S.), 799, 121 Am. St. Rep., 946.

Measured by this standard, we think it clear that the negligence of Clarence Youmans, the driver of the Chevrolet car, was the sole, proximate cause of the accident complained of by the plaintiffs. The fact the bus was stopped on a portion of the paved highway was merely a circumstance of the accident, and not its proximate cause. The causal connection between the original negligence, if any, and the ultimate injury was broken. No reasonable inference may be drawn that the accident, with its serious aftermath, was the natural and probable consequence of the bus company's negligence or wrongful act. Or that it ought to have been foreseen, in the light of the attendant circumstances.

We conclude that the Circuit Court should have granted the motion for a directed verdict.

Judgment reversed, and both cases remanded for entry of judgment in favor of the defendants.

MR. CHIEF JUSTICE BONHAM, MR. JUSTICE BAKER and MESSRS. ACTING ASSOCIATE JUSTICES E. C. DENNIS and WM. H. GRIMBALL concur.