15827

AYERS v. ATLANTIC GREYHOUND CORP. ET. AL.

(37 S. E. (2d), 737)

*Messrs. N. A. Turner,* of Columbia, and *P. L. Felder, Jr.,* and *Julian S. Wolfe,* both of Orangeburg, Counsel for Appellants,

*Messrs. T. B. Bryant, Jr.,* and *Zeigler & Brailsford,* all of Orangeburg, Counsel for Respondent,

April 11, 1946.

MR. ASSOCIATE JUSTICE STUKES delivered the unanimous Opinion of the Court.

Respondent's intestate went in a Pontiac sedan with his daughter, who drove, on November 24, 1944, from their farm home near Bowman, in Orangeburg County, to Win-

ston-Salem, North Carolina. Returning, about halfway between Columbia and Orangeburg, around nine o'clock at night, they crashed into the rear end of a parked passenger bus of the Atlantic Greyhound Corporation, with the tragic result of death to both occupants of the automobile. The action is under Lord Campbell's Act, Secs. 411, 412, of the Code of 1942. The appeal is from verdict and judgment for respondent.

The bus was loaded with passengers and on its regular route from Columbia to Charleston. The engine began to give trouble, would cut off, start upon cranking, and stop again, so the driver, the appellant Gardner, brought the bus to a stop on the pavement but very near the right edge. Beyond, there was an earth shoulder eleven feet wide. The paved portion of the road was twenty-two feet and on the opposite left the earth shoulder was thirteen feet in width.

Almost immediately there came along another bus of the Corporation, meeting the one in difficulty and en route toward Columbia. The driver of it stopped momentarily opposite Gardner and inquired whether the latter was in trouble and upon affirmative answer he proceeded farther north and parked his bus on the shoulder of the road, entirely off the pavement, and at a distance which was variously estimated (from thirty feet up) by the witnesses, he said about two hundred and seventy-five feet, with headlights burning but "dimmed".

On this Columbia-bound bus there was a mechanic of the Corporation and he left it with the driver to assist with the disabled bus. The motor of the latter was at the rear and Gardner opended the compartment by use of the tool for that purpose so that the mechanic could get to the engine, which he did and began investigation. Thereupon Gardner returned to the driver's position in the bus in order to operate the starter, at the request of the mechanic. When the engine soon stopped again he proceeded for the first time to undertake to get from their storage place the flares or flambeaus to place them fore and aft the bus as a warning to

traffic approaching from both directions. It was necessary in order to get them, to loosen two screws and Gardner had finished with one and was unscrewing the other when the collision occurred.

The disabled bus was parked in a depression in the road which partly, at least, obscured the vision of it from vehicles approaching, like decedent's automobile, over the crest behind it. The peak of the latter was variously stated in the testimony to be from three hundred feet to five hundred feet and more away. Several rear lights were burning on the bus, as were its interior lights.

Respondent relied upon several allegations of alleged willful, wanton and reckless negligence, principally the delay of Gardner in putting out warning flares and his failure to park the disabled bus on the shoulder of the road, clear of his right-hand side of the pavement which constituted the ordinary path of decedent's car. 1942 Code, Sec. 1616, 26 (a) and (b) ; and the rules regulating the operation of buses, 4 Code of 1942, p. 903, par. 2.22, 2.23. Part of respondent's theory was also that the head and body lights of the parked Columbia-bound bus blinded or at least interfered with the vision of the driver of decedent's automobile. But the headlights were dimmed, that is, they were deflected downward, as established and explained by the undisputed testimony. However, from one of the photographs in evidence, which was taken several months afterward under simulated conditions, it appears that these lights made a glare through which it was difficult, to say the least, for one to see clearly.

Appellants defended upon the ground of the alleged negligence and recklessness of the driver of the automobile in approaching the buses without any care and at high speed. At least one witness attempted to estimate the speed at which the Pontiac ran into the bus but he was observing from his seat in the Columbia-bound bus and his opinion covered such a wide range of possible rates of speed that the testimony was probably worth little. The destructive and disastrous effect of the collision and the particular fact that the motor

of the bus was knocked loose from its fastenings and fell to the road were circumstances which indicated excessive speed, in contradiction of which an expert testified for respondent that the engine of the bus was so mounted that less than a heavy blow would dislodge it.

The bus drivers, the mechanic and several passengers and others testified, from which the foregoing facts have been stated, but the narrative may not be as strongly worded in favor of, or against, the deceased driver as· the evidence and the reasonable inferences from it warrant. But that is unimportant. The difficulty of determining whether the driver of the automobile should be held guilty under the testimony, as a matter of law, of recklessness or negligence is not now encountered for she or her estate or representative is not suing here. The action is in behalf of the beneficiaries of her guest and effort was not made in the testimony or briefs to impute her alleged negligence and recklessness to the deceased guest. Our problem is thereby simplified.

Appellants made timely motions for nonsuit, directed verdict in their favor and afterward for judgment *non obstante veredicto* and for new trial. The motions were, in turn, refused and the questions presented on appeal all concern alleged errors thereabout. Thus the appeal really presents the single question, Was the verdict in favor of respondent justified by the evidence? Or, stating it more precisely, for it is a law case in which the jury are the fact-finders, Was there evidence upon which the jury could reasonably find the facts implicit in their verdict for respondent?

Important in the consideration of the case is this: The answer (after general denial) alleged joint or common enterprise of the driver of the automobile and the deceased intstate but did not plead contributory negligence of the driver as a bar to respondent's action; instead the alleged contributory negligence of the deceased and the sole negligence of the driver were pleaded as defenses. But appellants' several motions contained no reference to joint enterprise or any plea of imputed negligence. This was proper for there was no evi-

dence of control or activity of the deceased in the operation of the automobile in which he met death and an agreed amendment to the transcript of record establishes that respondent's intestate was a guest-passenger or companion. A surviving daughter gave the only testimony on the subject, as follows: "My sister did not want to go by herself and since I could not go with her, my father rode up there." In these circumstances the briefs appropriately contain nothing of the law of common enterprise and imputed negligence. And there was no evidence of acts or omissions of the decedent which constituted contributory negligence on the part of him, a guest and companion. *Funderburk v. Powell,* 181 S. C., 412, 187 S. E., 742. See also, *Crapse v. Sou. Ry. Co.,* 201 S. C., 176, 21 S. E. (2d), 737.

Appellants are therefore restricted to rely upon a denial of negligence on their part and upon the sole negligence of the automobile driver. But there was enough even in the testimony of their witnesses for the jury to reasonably find them guilty of negligence, and the point need not be expounded in view of the statement of facts above. The evidence made it a question for the jury and by their verdict they answered it unfavorably to appellants.

But the latter go further in argument here and, in effect, grant their own negligence and contend that the negligence of the automobile driver was an intervening proximate cause of the collision and served to insulate their prior negligence, if any, from the responsibility for the injury. Respondent meets them on this battleground and for the purpose of argument admits negligence in the operation of the automobile in which deceased was a guest, but denies that it constitutes a defense to appellants' liability for their negligence (implicit in the verdict) as a matter of law. On the contrary, respondent insists that the problem or proximate cause thus presented was properly for solution by the jury. Incidentally, there is no charge of error in the trial judge's instructions to the jury and they are not even included in the record.

*Funderburk v. Powell, supra,* perhaps presented facts nearer those of the present case than any other in our reports although the highway obstruction was by a railway train instead of a passenger bus as here and statutory violations were not involved. It was held that the automobile driver acted with negligence and recklessness but his passenger was permitted to recover for injuries received in the collision. Authorities for this result, too numerous to now cite, were carefully and painstakingly reviewed.

Counsel for appellants strongly argue the authority of *Locklear v. Southeastern Stages,* 193 S. C., 309, 8 S. E. (2d), 321, which was a case of some similarity but study of it discloses distinguishing facts. There the bus stopped merely to take on prospective, signaling passengers who stood on the edge of the highway, between the limit of the pavement and the adjacent ditch. There was no hill or depression in the road, unlike in our case. The earth shoulder was rough toward the ditch (the contrary appears here) but five-eighths of the width of the bus was nevertheless on the shoulder. Moreover the occupants of the car approaching from the rear saw the bus come to a stop in ample time and distance to avoid it but the driver attempted to pass on its right (despite the law's requirement of passage to the left) and ran into the intended passengers who were boarding the bus from the extreme edge of the shoulder. The differences in the stated facts and those of the instant case are marked and numerous; they need no further comment.

Digests of a large number of cases which involved facts more like those presented by the case in hand are found in the valuable annotation in 131 A. L. R., 562, upon the subject of the respective rights and duties of one who involuntarily stops a vehicle upon a highway and the drivers of, and passengers in, other vehicles involved in consequent collisions. From it (p. 583) the following is quoted, omitting the citations of supporting cases from many jurisdictions: "In a number of cases it has been expressly held, or is to be necessarily inferred from the language thereof, that it is

a question for the jury as to whether it was reasonably possible or practicable, within the meaning of statutory provisions or rules of law, for one temporarily stopping a car along the improved or main traveled portion of the highway, for a necessary purpose, to have removed it therefrom as required by the statute."

It is generally held that the burden of proving the necessity or excuse of stopping on the main-traveled portion of the highway, or the practicability of moving off such portion of the highway, within the meaning of statutes such as Code sec. 1616, regulating stops on the highway, is upon him makes such stop. 131 A. L. R., 603; *Silvey v. Harm,* 8 P. (2d), 570; *Casey v. Gritsch,* 36 P. (2d), 696; *Scoville v. Kegler,* 80 P. (2d), 162; *Tibbetts v. Dunton,* 174 A., 453, *Martin v. Tracy,* 246 N. W., 6; *Smith v. Producers Cold Storage Co.,* 128 S. W. (2d), 299; *Watt v. Associated Oil Co.,* 260 P., 1012; 3 Berry on Automobiles, 131.

Quite a number of decided cases are cited in the aforementioned annotation (131 A. L. R., at p. 605), for the following postulate: "The negligence of one in violating a statute prohibiting the stopping of automobiles along the traveled portion of the highway when it is practicable to remove them therefrom does not relieve such person from liability (establishes his liability?) even though the negligence of a third person may have concurred in proximately causing the injury complained of."

The operation of a motor vehicle at high speed on the highways in the nighttime is fraught with danger to life and limb. That is common knowledge; almost every daily newspaper contains one or more accounts of resulting deaths. The statutes make no difference in the legal speeds between day and night although no one will contend that he can see the road ahead as well in darkness as in daylight, even with the aid of good headlights; and the vision of every night driver is adversely affected by the lights of approaching or still vehicles ahead of him. Under these circumstances can one guilty of negligence in the obstruction of a highway at night

reasonably contend that he need not anticipate that another user of the highway may collide, possibly negligently, with the obstruction? We think the obvious answer is no. The Court would not be justified in taking from the jury, the triers of the facts, the issue of liability for negligence in such a case. And this is such.

The accident under review was not an uncommon collision in these times. Certainly it was not unpredictable. The jury were properly permitted to decide whether it or its like should have been foreseen by the original wrongdoers, the appellants, whereby they should be held liable for the results so far as respondent (who represents a blameless guest-passenger) is concerned. The rule which they would invoke was stated in the *Locklear case, supra,* as follows: "The test, therefore, by which the negligent conduct of the original wrongdoer is to be insulated as a matter of law by the independent negligent act of another, is whether the intervening act and the injury resulting therefrom are of such character that the author of the primary negligence should have reasonably foreseen and anticipated them in the light of attendant circumstances. The law requires only reasonable foresight, and when the injury complained of is not reasonably foreseeable, in the exercise of due care, there is no liability. One is not charged with foreseeing that which is unpredictable or that which could not be expected to happen." We do not think that the negligence of the automobile driver, if any, was of such independence and unforseeability as to insulate, as a matter of law, the negligence of appellants which was reasonably inferable from the evidence. It results that the trial court properly submitted the issue to the jury.

The intervening negligence of another will not excuse the first tort-feasor, if the intermediate wrong or a similar one (*Tobias v. Carolina P. & L. Co.,* 190 S. C., 181, 2 S. E. (2d), 686) should have been foreseen in the exercise of due care; the original negligence remains active and constitutes a concurring proximate cause of the ultimate injury. *Pfaehler v. Ten Cent Taxi Co.,* 198 S. C., 476, 18 S. E. (2d),

331; *Hunter v. Boyd,* 203 S. C., 518, 28 S. E. (2d), 413. We repeat that it matters not that the supervening and concurrent cause was an act of negligence of a third person (38 Am. Jur., 716, 717; *Tate v. Const. Co.,* 168 S. C., 481, 167 S. E., 826, and cases cited) or even a willful or criminal act. *Green v. Ry. Co.,* 131 S. C., 124, 126 S. E., 441.

Our present decision is buttressed by the further consideration that the unfortunate accident before us is just such as it must have been anticipated (by the framers of the requirements of flares and of parking or stopping off the traveled portion of the highway) would be prevented by observance of the regulations. This is helpful in the solution of the problem of proximate cause. It is the converse of the principle observed in *Wright v. S. C. Power Co.,* 205 S. C., 327, 31 S. E. (2d), 904, where the accident was clearly not within the mischief intended to be avoided by the ordinance which was invoked. Here we have the opposite. A violator of a safety statute or ordinance may justly and logically be held to foresight of injury within the prospect of the enactment, even though it be contributed to by the concurrent delict of another. The latter should be foreseen if it is of the nature of injuries sought to have been guarded against by the regulation.

The following was quoted with approval from 20 R. C. L., 43, in our case of *McBride v. A. C. L. R. R. Co.,* 140 S. C., 260, 138 S. E., 803: "The meaning of proximate cause in this connection has been explained as follows: If the injury complained of is a natural and probable consequence of a violation of the statute, then that violation is correctly taken as the proximate cause of the injury. If the very injury has happened which was intended to be prevented by the statute law, that injury must be considered as directly caused by the nonobservance of the law." To the same effect is this excerpt from 38 Am. Jur., 838: "If the very injury has happened which was intended to be prevented by the statute law, that injury must be considered as directly caused by the nonobservance of the law."

The exceptions are overruled and the judgment affirmed.

Messrs. Associate Justices Taylor and Oxner and Messrs. Acting Associate Justices J. Henry Johnson and G. Duncan Bellinger concur.