## 17741

Fred A. DEESE, Respondent, v. J. N. WILLIAMS and South Carolina State Highway Department, of which South Carolina Highway Department is Appellant

(118 S. E. (2d) 330)

*Messrs. Daniel R. McLeod, Attorney General,* and *Benjamin B. Dunlap, Assistant Attorney General,* of Columbia, *for Appellant,*

*Messrs. Murchison, West & Marshall,* of Camden, *for Respondent,*

January 31, 1961.

OXNER, Justice.

This is an action to recover damages for personal injuries alleged to have been sustained as a result of the joint negligence and recklessness of the agents and servants of J. N. Williams and the State Highway Department. The case was previously before this Court on a question of venue. *Deese v. Williams* [*and South Carolina Highway Department*], 236 S. C. 292, 113 S. E. (2d) 823. The trial resulted in a verdict in favor of plaintiff against the Highway Department for $8,000.00 actual damages, and against Williams for $2,000.00 actual damages and $2,000.00 punitive damages. From the judgment entered on the verdict, only the State Highway Department has appealed.

The first question presented is whether the Court below erred in refusing a motion by appellant for a nonsuit and later for a directed verdict upon the grounds (1) that there was no proof of actionable negligence on its part and (2) that even if any negligence was shown, it was not of that character for which consent to sue the State is given by Section 33-229 of the 1952 Code.

Respondent's injuries resulted from a collision of three motor vehicles—an automobile which he was driving, a truck of appellant, and a truck of defendant J. N. Williams

—which occurred about eight o'clock on the morning of December 11, 1958, at a point on U. S. Highway No. 521 about twelve miles north of Lancaster, South Carolina. It had been snowing for some time. Respondent and another man were returning home from work, driving in a southerly direction. As they went up a hill, they came upon a car stopped on their side of the asphalt highway. Ahead of this car was a truck of appellant with a snow plow attached which was clearing snow off the highway. The driver had difficulty getting up the hill and several of appellant's employees were pushing the truck. While this was being done, respondent's car, which was about 200 feet from the crest of the hill, and the car immediately ahead of him remained stationary. Respondent was afraid to go around this car and appellant's truck because of the danger of some vehicle traveling in the opposite direction coming over the crest of the hill. As he sat in his car, appellant's truck proceeded up the hill to a point about 100 feet from the crest, where it was driven into a driveway on the western side of the road and the snow dumped. It was then backed into the highway and driven down the hill at a speed of about four or five miles an hour. When within five or six feet of respondent's car, it stopped. Just prior to this time, one of appellant's employees had gone up the hill to warn oncoming traffic. (Although according to respondent's witnesses he had no flag, for convenience he will be referred to as the flagman.) While he was standing about 75 or 100 feet from the crest of the hill, a trailer-truck belonging to Williams, loaded with about fifty or sixty thousand pounds of grain, traveling in a northerly direction, came over the hill at a speed variously estimated as between 35 and 50 miles an hour. The flagman waved his hands in an endeavor to stop the Williams truck but due to the condition of the road, the driver was unable to do so and in an effort to avoid the accident, pulled to the right and struck the right rear of appellant's truck, knocking it into the left front and side of the automobile in which respondent sat.

The foregoing summary is taken from respondent's testimony. However, that of appellant differed in only two material particulars. The flagman testified that he was standing at the crest of the hill when the Williams truck approached and that he endeavored to stop it by waving a red flag. There is also a further dispute as to whether appellant's truck was standing when hit or moving very slowly, appellant's testimony being to the effect that it had not stopped.

Assuming as true the testimony offered by respondent, as we are required to do in determining whether there was error in refusing the motions for nonsuit and directed verdict, we think it may be reasonably inferred that appellant was negligent in failing to give northbound traffic adequate warning of the danger created by stopping its truck 200 feet below the crest of the hill. With this truck standing on the eastern side of the road and respondent's car standing almost opposite it on the western side, the highway was completely blocked. It could be reasonably found that this blocking of the highway could have been avoided if appellant's truck had been stopped at a point where northbound traffic could have passed around it. It was for the jury to say whether in the exercise of ordinary care, the employees of appellant should have anticipated the possibility of a vehicle going north coming over the hill and being unable to stop in time to avoid a collision. According to the testimony offered by respondent, the flagman instead of going to the crest of the hill, left his red flag in the truck and proceeded to wave his hands while standing 75 or 100 feet below the crest. There was also testimony to the effect that appellant had such signs as "men working", but they were not used on this occasion.

It is also argued that the Williams truck was traveling at such speed that the driver could not have stopped in time to avoid the collision even if adequate warning had been given. But the testimony shows that if the flagman had gone to the brow of the hill, he could have seen the Williams truck approaching for a distance of a quarter of a mile, which would have afforded an opportunity to give timely warning.

Nor do we find any merit in appellant's contention that the undisputed testimony shows that the chain of causation was broken by negligent and reckless conduct on the part of the driver of the Williams truck. "The intervening negligence of a third person will not excuse the first wrongdoer, if such intervention ought to have been foreseen in the exercise of due care. In such case, the original negligence still remains active, and a contributing cause of the injury. The test is to be found in the probable consequences reasonably to be anticipated, and not in the number or exact character of events subsequently arising." *Locklear v. Southeastern Stages, Inc.,* 193 S. C. 309, 8 S. E. (2d) 321, 325. The testimony in this case justifies an inference that the conduct of appellant's employees was a substantial factor in bringing about the collision with respondent's car and that the accident would not have happened in the absence of negligence on the part of appellant. Assuming that the driver of the Williams truck was negligent and reckless as found by the jury, this fact would not relieve appellant from liability, if the jury found, as we think they could have reasonably done, that the negligence of appellant concurred as a proximate cause of respondent's injuries. *Brown v. National Oil Co.,* 233 S. C. 345, 105 S. E. (2d) 81. Our conclusion that the question of whether the respondent's injuries were caused by the joint negligence of both defendants was properly submitted to the jury is fully supported by *Ayers v. Atlantic Greyhound Corporation,* 208 S. C. 267, 37 S. E. (2d) 737.

The only other question raised in connection with the refusal of appellant's motion for a directed verdict is whether the immunity of the State from suit has been waived in an action of this kind. The statute, Section 33-229 of the 1952 Code, permits suit for actual damages to be brought against the Highway Department by "any person who may suffer injury to his person or damage to his property by reason of (a) a defect in any State Highway, (b) the negligent repair of any State Highway or (c) the negligent operation of any

vehicle or motor vehicle in charge of the State Highway Department while such vehicle or motor vehicle is actually engaged in the construction or repair of any of such highways. * * *." Under this statute, as amended, recovery for personal injuries may not exceed $8,000.00. (We are not now concerned with the amendments to this statute made after the occurrence of the accident out of which this case arises.)

It seems quite clear that this truck was actually engaged in the repair of a highway. *Robinson v. State Highway Department,* 159 S. C. 405, 157 S. E. 136; *Greer v. State Highway Department,* 160 S. C. 510, 159 S. E. 35; *Heidt v. State Highway Department,* 189 S. C. 310, 1 S. E. (2d) 188. It is argued, however, that the real negligence, if any, of appellant concerned not the operation of the truck but the failure to provide adequate warning, which appellant says is not included under Section 33-229. This contention overlooks the fact that the blocking of the highway by the truck gave rise to the duty to provide adequate warning and the discharge of this duty was directly connected with the operation of the truck. It was held in *Smoak v. Charleston County,* 128 S. C. 379, 122 S. E. 862, that although many kinds of temporary obstructions to a highway are permissible, "the permissibility is limited by the duty of removing them within a reasonable time and of taking such precautions against collisions in the meantime as prudence and the safety of travelers would suggest", and that the failure of a county to perform this duty subjects it to liability for a defect in the highway. In *Epps v. South Carolina State Highway Department,* 209 S. C. 125, 39 S. E. (2d) 198, it was held that it is the duty of the Department to keep its highways in a reasonably safe condition for travel and to erect and maintain such signs and warnings as may be reasonably necessary to enable users of the highways, exercising ordinary care and prudence, to avoid injury to themselves and others. We think under these authorities that this case comes within the provisions of Section 33-229.

Before concluding our discussion of this phase of the case, it should be stated that in an action of this kind the plaintiff must allege and prove absence of contributory negligence. Section 33-232. But it is conceded that there was no negligence on the part of respondent.

We now turn to the attack made by appellant upon the form of the verdict. It is contended that the jury sought to apportion the damages between the two defendants which is not permitted and that the verdict is illogical and not responsive to the Court's instructions. For these reasons it is said that the Court should have set aside the verdict and granted appellant's motion for a new trial. Respondent says our decisions allow a jury to apportion damages between joint tort-feasors and further that the appellant waived any right it may have had to object to the form of the verdict.

When the verdict was published by the Clerk, the following occurred:

"The Court: Now, gentlemen, counsel for the various parties, as you understand, that is not precisely in the form in which I instructed the jury to bring the verdict in. Do you have any question about the manner in which the verdict is written?

"Mr. West (Attorney for plaintiff): We don't, sir. As we understand it, it's a total verdict of $12,000.00, $8,000.00 against the Highway Department and $4,000.00 against the defendant Williams?

"The Court: That's my understanding of it, but if that's not correct, or if anybody has any question about it, I will give it back to the jury with proper instructions to reform it.

"Mr. Moise (Attorney for Williams): As we understand the verdict, it's a verdict against J. N. Williams for $2,000-.00 actual damages, and $2,000.00 punitive.

"The Court: Is that the way you understand it, Gentlemen?

"Mr. deLoach, Sr. (Attorney for Highway Department): We understand it, your Honor.

"The Court: All right, sir, there is no question about it then?

"Mr. deLoach, Sr.: I don't think we have any question, your Honor.

"The Court: You have no question about it?

"Mr. deLoach, Sr.: No, sir."

After making the foregoing inquiries the trial Judge received the verdict. No objection thereto was made by appellant until some time later when the motion for a new trial was argued.

It was held in the early case of *White v. McNeily,* 1 Bay 11, contrary to the rule at common law, that where joint tort-feasors are sued, the jury may sever the actual damages and apportion them. Although Judge O'Neall said in *Smith v. Singleton,* 2 McMul. 184, that the wisdom of such departure is "very questionable", the authority of *White v. McNeily* has been recognized in a number of later cases. *Rhame v. City of Sumter,* 113 S. C. 151, 101 S. E. 832; *Jenkins v. Southern Railway Co.,* 130 S. C. 180, 125 S. E. 912; *Johnson v. Atlantic Coast Line Railroad Co.,* 142 S. C. 125, 140 S. E. 443. Actual damages were apportioned in *Miller v. Atlantic Coast Line Railroad Co.,* 140 S. C. 123, 138 S. E. 675 and *Campbell v. Hill,* 158 S. C. 151, 155 S. E. 273, and apparently no question thereabout was raised. We know of no other Court which, in the absence of statutory authorization, permits the apportionment of damages between joint tort-feasors.

Notwithstanding the fact that the unique rule laid down in *White v. McNeily* has been generally recognized by the Bench and Bar as the settled law of this State, appellant says it is unsound and illogical and should no longer be followed. But the question as to whether the foregoing decision and those following it should be overruled at this late date need not now be decided. For the purpose of this case, we shall assume that in a suit against several defendants on a joint tort, a jury is not empowered to sever the actual damages

and assess each defendant according to the degree of his culpability.

Even in those jurisdictions denying the power of the jury to apportion damages between joint tort-feasors, it is generally held that when a jury does so, the verdict is not void but only erroneous in form. *Whitney v. Tuttle,* 178 Okl. 170, 62 P. (2d) 508, 108 A. L. R. 789; *Aitken v. White,* 93 Cal. App. 134, 208 P. (2d) 788; 52 Am. Jur., Torts, Section 123. And when, as here, no objection is made when such a verdict is published and counsel for all parties acquiesce in its form, it is too late to make a complaint after the jury is discharged. By failing to make timely objection, the irregularity in the form of the verdict is waived. In *Schuman v. Chatman,* 184 Okl. 224, 86 P. (2d) 615, 617, the Court said:

"We shall next consider the improper action of the jury in apportioning the damages between the joint tort-feasors. Admittedly it was improper for the jury to have attempted the apportionment. Such a verdict should not be reversed. It should have been returned to the jury for amendment or correction. However, in this case it was received and no objection to its receipt made. In this state such verdicts are not void even where as in this case a sum in gross is not assessed against both defendants. * * *, a new trial should not be granted where, as in this case, the verdict has been received without objection. Indeed the absence of such objection relieves the court of the responsibility of attempting by reformation to preserve a right which a party did not at the appropriate time deem of sufficient moment to warrant an objection. The judgment of the trial court in this case will not be disturbed by reason of the form of the verdict upon which it is based."

Support of the foregoing view as to waiver will also be found in the decisions of this Court. In *Rhame v. City of Sumter, supra,* 113 S. C. 151, 101 S. E. 832, 833, plaintiff sought to recover damages resulting from the alleged joint

negligence of one Forshee and the City of Sumter. The jury returned a verdict of $425.00 actual damages against each defendant. No objection to the form was made when it was published. On appeal by the city, the judgment entered on that verdict was affirmed. While the major question discussed by the Court related to the construction of the verdict, there being a dispute as to whether there was a joint verdict for $425.00 or a separate verdict against each defendant for $425.00, the transcript of record shows that the exceptions squarely raised the question of whether the city waived any irregularity in the verdict. Exception 6 was to the effect that the verdict as rendered was contrary to the charge in that the jury had been instructed to bring in a joint verdict if they found both defendants liable. By Exception 8 it was contended that there was no basis for the apportionment of the verdict. Exception 10 in that case was as follows: "His Honor erred in holding that the objections to the form of the verdict came too late; whereas, His Honor should have held that the motion was timely and that the objections went to the substance as well as the form of the verdict." In the course of an opinion overruling these and other exceptions, the Court said:

"While the verdict is unusual, no effort was made to correct it before the jury had separated. His Honor would have done so had he been requested to find out just what the jury meant, and had the verdict reformed. * * * The defendant's counsel made no attempt to find out what the jury intended, and their objections come too late. It was their business to clarify and ask for a correction and reformation of verdict before the jury were discharged."

In *McAlister v. Thomas & Howard Co.*, 116 S. C. 319, 108 S. E. 94, 95, the jury, in disregard of the Court's instructions, found a general verdict of $2,500.00. A new trial was sought "on the ground that verdict was not responsive to the instructions, in that the verdict does not state whether it is for actual damages, or punitive damages, or for how much actual or how much punitive damages." It was held

that it was the duty of the defendant's attorney to have called attention to the irregularity in the form of the verdict when it was published and by failing to do so, defendant waived any right to complain.

In *Bethea v. Western Union Telegraph Co.*, 97 S. C. 385, 81 S. E. 675, which was an action to recover actual and punitive damages for delay in the delivery of a telegram, the jury returned a verdict for punitive damages only in the sum of $250.00. After the jury was discharged, the defendant attacked the verdict and asked that it be set aside on the ground that it showed that no actual damages had been sustained. The refusal of the trial Judge to set it aside was affirmed. The Court held that the irregularity, if any, was waived by failure of counsel to make an objection before the jury separated.

The foregoing and other cases were reviewed in *Limehouse v. Southern Railroad Co.*, 216 S. C. 424, 58 S. E. (2d) 685, 688. It was there stated: "It is well established that where a verdict is objectionable as to form, the party who desires to complain should call that fact to the Court's attention when the verdict is published. Otherwise, the right to do so is waived."

We conclude that appellant waived any right to object to the form of this verdict. We do not think a party should be permitted to sit idly by while a verdict erroneous in form is being returned and witness its receipt without objection and later, after the jury has been discharged, claim advantage of the error, thus invited by acquiescence.

Finally, it is claimed that the sum of $8,000.00 found against appellant is excessive and wholly disproportionate to its culpability. It is not contended that respondent's injuries did not justify the recovery of $10,000.00 actual damages but that the severance of damages made by the jury was arbitrary, capricious, and contrary to the evidence in that the driver of the Williams truck was negli-

gent in a much greater degree than appellant's employees. It may first be stated that under the evidence there may be a reasonable difference of opinion as to the relative culpability of the parties. We do not know whether the jury found recklessness on the part of the appellant's employees because they were properly instructed that punitive damages could not be awarded against appellant. Then, too, there is a serious doubt as to whether the precise question now argued is raised by the exceptions. But apart from these considerations, the contention now made cannot be sustained because of lack of prejudice.

The verdict clearly shows that the jury found that the plaintiff had sustained actual damages in the sum of $10,-000.00 as a result of the joint negligence of the two defendants. In fact, it is stated in the order of the trial Judge that the jury first wrote the following verdict: "We find for the plaintiff $10,000.00 actual damages and $2,000.00 punitive damages." Subsequently this verdict was marked "void" and the one now under consideration entered. Of course, under the statute recovery against the Highway Department could not have exceeded $8,000.00 but except for this, under the finding of the jury that respondent's injuries were caused by the joint and concurrent negligence of the defendants, both would be liable for the full amount of actual damages sustained. It is quite clear that appellant has not been hurt by the failure of the jury to award a greater amount against Williams. Appellant might have been sued severally and the smaller verdict against Williams does not relieve it of its own liability as determined by the jury. This conclusion is fully sustained in a well considered opinion by Judge Parker in *Ohio Valley Bank v. Greenebaum Sons Bank & Trust Co.,* 4 Cir., 11 F. (2d) 87. Also, see *Siebrand v. Gossnell,* 9 Cir., 234 F. (2d) 81, and cases therein cited.

Affirmed.

STUKES, C. J., and TAYLOR, LEGGE and MOSS, JJ., concur.