**Alynne S. McGUIRE, as Executrix of the Estate of Thomas J. McGuire, IV, deceased, Plaintiff,**

**v.**

**Randolph H. LLOYD, Frank Lloyd, Benny S. Moore, d/b/a Benny Moore Mobile Homes and Clifton W. Scott, Defendants.**

**Civ. A. No. 69–765.**

United States District Court, D. South Carolina, Columbia Division.

April 2, 1971.

Harold W. Jacobs and Wilburn Brewer, Jr., Columbia, S. C., for plaintiff.

Robert E. Kneece, James W. Alford and Edmund H. Monteith, Columbia, S. C., for defendants Randolph H. Lloyd, and Frank Lloyd.

Robert J. Thomas, Columbia, S. C., for defendant Clifton W. Scott.

### OPINION AND ORDER

DONALD RUSSELL, District Judge.

Suing to recover for the wrongful death of her son, the plaintiff Executrix recovered judgment against the defendants Randolph H. Lloyd, Frank Lloyd and Clifton W. Scott. The defendant Scott has now moved for judgment in

his favor, n. o. v. or for a new trial *nisi*.[1] The defendants Lloyd have moved for a new trial *nisi*.

So far as the motion of the defendants Randolph H. Lloyd and Frank Lloyd is concerned, the motion is denied. The evidence in support of the jury's finding of negligence against such defendants clearly required the submission of such issue to the jury and the conclusion of the jury was, in my opinion, in accord with the weight of the testimony. Nor was the verdict excessive.

The motion of the defendant Scott poses a more difficult problem. Such defendant contends the Court should have directed a verdict in his favor on the grounds both that he was not negligent under the circumstances and that, even if he were negligent, he was insulated from liability by the independent, intervening negligence of the defendant Frank Lloyd, which negligence was the sole cause of the deceased's death.

I am of opinion the evidence of the defendant Scott's negligence was sufficient to require the submission of such issue to the jury, and I am persuaded to this conclusion largely by the defendant's own testimony. The testimony was that a house trailer was proceeding at about 15 to 20 miles per hour westward through the Wateree swamp on the highway from Sumter to Columbia. The highway, which is four-laned at all other points, narrows to two-lanes through this swamp. The bridge over the River, which is near the Columbia-end of the two-lane portion of the highway, is so humped in construction that a vehicle approaching from the east or Sumter side is not really visible until it begins to descend from the top of the bridge. The defendant Scott was driving a pickup truck, hauling a mule, in the direction of Sumter along the highway. As he approached the entrance to the swamp area and near the foot of the bridge, he observed the tractor hauling a mobile home coming down the western side of the bridge. The mobile home was approximately 12 feet wide. The width of the bridge was approximately 22 feet. The mobile home thus extended some 2 feet over the center of the bridge and left only about 9 to 10 feet open on its left-side of the bridge available for use by approaching vehicles. It was the testimony of the defendant Scott that when he saw this house-trailer approaching, encroaching as it was some 2 feet over the center line on the bridge, he pulled his truck off the highway onto the shoulder and stopped at the foot of the approach to the bridge on the Columbia-side. The evidence from other witnesses reasonably indicated that Scott did not pull off the highway but stopped in his lane of traffic, awaiting the passage of the mobile home from the bridge. The physical evidence of the accident supported this conclusion. Of course, had Scott pulled off the highway as he testified, he would not have been negligent. His testimony that he did pull off established a reasonable basis for the jury to conclude both that he recognized and foresaw danger in stopping on the highway in his lane of traffic and that he knew, in the exercise of proper care, that he should have pulled off the highway onto the shoulder and could have done so. Under those circumstances, it was perfectly proper for the jury to find that, if Scott had not pulled off the highway but had stopped on the highway proper, he had, by his own standards, not exercised ordinary care and was negligent in stopping on the highway, thereby, by reason of the approach of the mobile home, blocking the highway.

The issue of intervening cause is, though, much more perplexing. The deceased was traveling behind the truck of Scott. When Scott stopped in front of

---

1. The defendant Scott's motion, also, challenged the propriety of certain instructions given the jury by the Court and the alleged excessiveness of the verdict. In view of the ruling hereafter made on this defendant's motion for judgment n. o. v., it is unnecessary to consider the other grounds raised by the defendant Scott in his motion.

him at the foot of the bridge approach, he drove up behind Scott and stopped also. The truck of the defendant Randolph H. Lloyd, loaded with pulpwood, was in turn following some distance behind the car of the deceased. As the driver of this truck approached the bridge and the stopped vehicles of the deceased and Scott, he had a clear view 1200 feet straight ahead of him. The visibility on the occasion was good. The driver of the truck conceded he saw the car and truck stopped at the approach to the bridge when he was some 900 feet away. It was his explanation that his brakes failed to work and he was thereby unable to stop his truck which crashed into the car in which the deceased was riding, killing the latter, and then careened over against the truck of Scott, which was knocked down into the fill on the right-hand side of the road. On this record, which, for all practical purposes is undisputed, Scott urges that there should have been a direction of verdict on the grounds that the deceased's death was due, not to Scott's concurring negligence, but solely to the intervening, independent negligence of the defendant Frank Lloyd, the driver of the defendant Randolph H. Lloyd's truck.

Chief Justice Stacy was not exaggerating when he observed in Butner v. Spease (1940) 217 N.C. 82, 6 S.E.2d 808, 810, that, " * * * the application of the doctrine of insulating the negligence of one by the subsequent intervention of the active negligence of another, as a matter of law, is usually fraught with some knottiness." That is particularly true in this case. While both parties have cited numerous authorities from other jurisdictions, the rule of intervening cause is determinable by the law of the place of the accident, i. e., South Carolina. The two South Carolina cases most nearly like the present case factually are Locklear v. Southeastern Stages, Inc., (1940) 193 S.C. 309, 8 S.E. 2d 321, and Ayers v. Atlantic Greyhound Corp. (1940) 208 S.C. 267, 37 S.E.2d 737. Both expressed adherence to and applied the same rule. That rule has

been consistently stated in the other South Carolina cases dealing with the principle of intervening cause. As stated in Locklear and cited with approval in Ayers, "The test, therefore, by which the negligent conduct of the original wrongdoer is to be insulated as a matter of law by the independent negligent act of another, is whether the intervening act and the injury resulting therefrom are of such character that the author of the primary negligence should have reasonably foreseen and anticipated them in the light of attendant circumstances. The law requires only reasonable foresight, and when the injury complained of is not reasonably foreseeable, in the exercise of due care, there is no liability. One is not charged with foreseeing that which is unpredictable or that which could not be expected to happen." (193 S.C. at p. 319, 8 S.E.2d at p. 325). Or, as this case puts it at another point, "The intervening negligence of a third person will not excuse the first wrongdoer, if such intervention ought to have been foreseen in the exercise of due care." (193 S.C. at pp. 317–318, 8 S.E.2d at p. 325.) And, "Reasonable foreseeability", in this connection, "requires only that one foresee those injuries which naturally and probably follow from his act or omission." Berry v. Atlantic Coast Line Railroad Company (4th Cir. 1960) 273 F.2d 572, 579, cert. den. 362 U.S. 976, 80 S.Ct. 1060, 4 L.Ed.2d 1011.

In applying this rule, however, the two leading cases reached contrary results: In Locklear, the defendant was absolved from liability because of an independent, intervening cause; in Ayers, insulation of the defendant from liability under the doctrine of intervening cause was denied. The real difference between the two cases was not in the legal principle found applicable; both proclaimed their adherence to, and sought to apply, the same legal principle; the contrary result in the two cases is to be found in the difference in the facts of the two cases. In one case, the act of the third party, it was found, should have, in the exercise of due care, been

reasonably anticipated; in the other, the conduct of the intervening actor was not to be reasonably anticipated—that was the real explanation of the contrary results reached in the two cases in the application of the same legal principles.

In *Locklear*, a bus stopped partially on the highway, with all its lights burning. The visibility was good and the bus "could be seen from both directions for a distance of more than 300 yards". (193 S.C. at p. 313, 8 S.E.2d at p. 325.) Moreover, there was room on the left for the passing car to have gone to the left of the bus. Instead, the approaching automobile, driven at a high rate of speed, swerved to the right and crashed into the passengers preparing to enter the bus. Applying the legal principle already quoted, the Court held that, "The law requires only reasonable foresight, and when the injury complained of is not reasonably foreseeable, in the exercise of due care, there is no liability. One is not charged with foreseeing that which is unpredictable or that which could not be expected to happen. * * * (citing cases). Measured by this standard, we think it clear that the negligence of Clarence Youmans, the driver of the Chevrolet car, was the sole, proximate cause of the accident complained of by the plaintiffs. The fact the bus was stopped on a portion of the paved highway was merely a circumstance of the accident, and not its proximate cause." (193 S.C. at p. 319, 8 S.E.2d at p. 325.)

In *Ayers,* on the other hand, the defendant bus company had stopped its bus in its lane of traffic. Another bus of the defendant, going in the opposite direction, was parked off the highway some distance ahead of the first bus, with its lights on. There was testimony that lights on the second bus would make "a glare through which it was difficult, to say the least, for one to see clearly". (208 S.C. at p. 271, 37 S.E.2d at p. 738.) The first bus, also, was stopped "in a depression in the road which partly, at least, obscured the vision of it from vehicles approaching, like decedent's automobile, over the crest behind it. The peak of the latter was variously stated in the testimony to be from three hundred feet to five hundred feet and more away." (208 S.C. at p. 271, 37 S.E.2d at p. 738.) The car in which the plaintiff was traveling, was going in the same direction as the first bus and crashed into the rear of such bus. The defendant bus company claimed that the alleged negligence of the driver of the car was an independent, intervening cause, relieving it of liability for any injuries sustained by the passengers in the car. In denying such contentions and in applying the rule stated in *Locklear,* the Court said that "the vision of every night driver is adversely affected by the lights of approaching or still vehicles ahead of him. Under these circumstances can one guilty of negligence in the obstruction of a highway at night reasonably contend that he need not anticipate that another user of the highway may collide, possibly negligently, with the obstruction? We think the obvious answer is 'no'." (208 S.C. at pp. 275–276, 37 S.E.2d at p. 740.) [2]

It has been suggested—in fact, it seems implicit in the Restatement of Torts, 2d, Section 442 (1965)—that the issue of foreseeability, as used in connection with the doctrine of superseding or intervening cause, turns on whether the negligent conduct of the third party was "a normal response" to a situation created by the defendant's own negligent conduct or whether it was an "extraordinary" occurrence. See 100 A.L.R.2d 991–994, and Brown v. National Oil Company (1958) 233 S.C. 345, 353, 105 S.E.2d 81. This accords generally with Professor Prosser's notion of intervening or superseding cause, terms he finds both "overworked" and "undefined". Prosser, Torts (3d ed. 1964) sec. 51, p. 311. And this concept fits in with the distinction between *Locklear* and *Ayers*, a distinction that turns on the

---

2. A very similar case is Deese v. Williams (1961) 237 S.C. 560, 564, 118 S.E.2d 330.

facts and not on different legal principle. In the latter case, the conduct of the third party represented what must be deemed a "normal response" to the negligent situation created by the conduct of the defendant. In the *Locklear Case*, on the other hand, the situation was such—considering the condition of the highway—the visibility of other motorists and the want of any obstruction to vision—that the negligent action of the third party must be described as "extraordinary" and entirely unanticipated.

That the rule of intervening cause, as stated in *Locklear*, is the prevailing doctrine in South Carolina was recognized in this Circuit in Burleson v. Canada (4th Cir. 1961) 297 F.2d 588, which, as in *Locklear* and *Ayers*, resolved the issue of intervening cause on the basis of reasonable foreseeability.

Applying this South Carolina rule of reasonable foreseeability, it would seem that the facts of this case require a like result to that reached in *Locklear* rather than that in *Ayers*. By the admission of all concerned, the day was clear and the visibility of one approaching the bridge from the west or Columbia side was clear and unobstructed for a distance of practically 1200 feet. There was absolutely nothing to prevent the driver of the pulpwood truck from observing the parked truck of Scott at a distance within which he had more than ample time, had he been operating a truck in proper condition and at a proper speed and maintaining a proper lookout, to stop behind the Scott truck, which incidentally is exactly what the deceased himself did. So much the driv-

er of the pulpwood truck, under the cross-examination of plaintiff's counsel, admitted. He testified that he saw the pick-up truck stopped in the road at a point fixed by him as 900 feet from the collision, which should have provided him with ample time within which to stop. His only excuse for his failure to stop was the failure of his brakes. Cf., Grier v. Cornelius (1966) 247 S.C. 521, 530, 148 S.E.2d 338.[3] This certainly was an extraordinary condition which the defendant Scott could not anticipate. Actually, the defendant Scott was entitled to presume that the driver of the approaching vehicle was operating his truck with proper brakes and would drive same in a legal manner and with due care. Burleson v. Canada, *supra* (297 F.2d at p. 591); Myers v. Evans (1954) 225 S.C. 80, 85–86, 81 S.E.2d 32; Kennedy v. Carter (1967) 249 S.C. 168, 179, 153 S.E.2d 312.[4] In the exercise of ordinary care, should Scott have foreseen that an approaching vehicle with a clear and unobstructed view of about 1200 feet, whose driver admitted he saw the stopped vehicle 900 feet away, would likely collide with his truck because his brakes would not operate? Just as in *Ayers*, the answer was the converse, here, "We think the obvious answer is 'no'." Such being true, the motion of the defendant Scott for a directed verdict should have been granted.

It is, therefore, ordered, That the motion of the defendant Clifton W. Scott for judgment in his favor notwithstanding the verdict in this case be and the same is hereby granted, and judgment directed to be entered accordingly.

---

3. The plaintiff offered evidence, mostly circumstantial, to contradict this claim of the driver of the pulpwood truck that his brakes suddenly and without warning failed. The same reasoning would apply, so far as the defendant Scott's reliance on superseding cause is concerned, whether the brakes of the pulpwood truck suddenly failed or the driver of such truck failed to exercise any care to stop his truck.

4. In the last cited case, the Court said (p. 179 of 249 S.C., p. 317 of 153 S.E.2d) :

"Under the evidence in this case it is our conclusion that the intervening independent acts of negligence and willfulness on the part of Paden were the sole proximate and efficient cause of the injury to the respondent and such could not have been foreseen by the appellant in the exercise of reasonable care and was not a natural and probable consequence of his original violation of the *prima facie* speed law."